**WILLIAMS et al. v. JACKSONVILLE TERMINAL CO.**

**No. 237-J Civ.**

District Court, S. D. Florida, Jacksonville Division.

Oct. 21, 1940.

Frank F. L'Engle and Montague Rosenberg, both of Jacksonville, Fla., for plaintiffs.

Julian Hartridge, of Jacksonville, Fla., and John Dickinson, of Philadelphia, Pa., for defendant.

WALLER, District Judge.

This is a proceeding by and on behalf of the red caps of the Jacksonville Terminal Station to recover amounts alleged to be due as wages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., together with liquidated damages and attorney's fee.

Both sides to this controversy have moved for summary judgment on the pleadings, depositions, affidavits, and stipulations.

■ The material facts are not in dispute. A summary judgment is, therefore, appropriate.

The defendant, the Terminal Company, hereinafter referred to as "the defendant", admits that it is engaged in interstate commerce, and that the plaintiffs are its employees, and that they are likewise engaged in interstate commerce, by reason whereof the plaintiffs are entitled to be paid the minimum wages provided by Section 6 of said Fair Labor Standards Act, which wages the defendant contends the plaintiffs have received by way of tips or sums paid by passengers in its terminal station to red caps for handling the luggage, etc., of said passengers.

The plaintiffs contend that the sums received from passengers by way of tips are gifts or gratuities belonging to the plaintiffs and are not to be considered as "wages" within the meaning of the Fair Labor Standards Act. The sole question presented for determination is whether or not the sums so received by said red caps as tips should be considered or construed as "wages". If said tips are to be construed as wages under the Fair Labor Standards Act, then the plaintiffs have received in excess of the minimum wage provided by the Act and, therefore, have no right of action.

It is appropriate that a history of the relationships between the red caps and the defendant should be reviewed. It appears that for more than a dozen years the plaintiffs, commonly called "red caps", performed services in the terminal station of the defendant in carrying luggage and personal effects of passengers boarding and alighting from trains at said terminal station; that the sole compensation received by the red caps came from the sums paid by such passengers to said red caps in consideration of the services rendered the passengers in handling their luggage; that no wages or other compensation was paid by the Terminal Company to said red caps; that the red caps, however, were required to observe certain hours, rules, and regulations imposed by the Terminal Company for the infraction of which the red cap would be denied the right to continue so to work, which denial of right so to work might be temporary or permanent in nature; that the Ter-

minal Company furnished the red caps with uniforms; that no part of the sums paid by the passengers to the red caps was ever paid over to the Terminal Company; that whatever the red cap made he kept; that the red cap had no right to fix a definite charge for any service but was expected to accept whatever the passenger saw fit to give him; that the Terminal Company, prior to 1938, considered the red cap as a licensee or independent contractor, obliged to conform to established rules and regulations of the station; that in 1938 the Interstate Commerce Commission classified or characterized such red caps as employees of the Terminal Company as distinguished from independent contractors or licensees; that this ruling of the Interstate Commerce Commission was handed down less than thirty days before the effective date of the Fair Labor Standards Act.

The Terminal Company, pursuant to the above ruling of the Interstate Commerce Commission declaring red caps to be employees, and in contemplation of the Fair Labor Standards Act, served the following notice on the red caps:

"In view of the requirements of the Fair Labor Standards Act, effective October 24, 1938, and in consideration of your hereafter engaging in the handling of hand baggage and travelling effects of passengers or otherwise assisting them at or about stations or destinations, it will be necessary that you report daily to the undersigned the amounts received by you as tips or remuneration for such services.

"The carrier hereby guarantees to each person continuing such service after October 24, 1938, compensation which, together with and including the sums of money received as above provided, will not be less than the minimum wage provided by law.

"You are privileged to retain subject to their being credited on such guarantee all such tips or remuneration received by you except such portion thereof as may be required of you by the undersigned for taxes of any character imposed upon you by law and collectible by the undersigned.

"All the matters above referred to are subject to the right of the carrier to determine from time to time the number and identity of persons to be permitted to engage in said work and the hours to be devoted thereto to establish rules and regulations relating to the manner, method and place of rendition of such service, and the accounting required."

Said notice at least had the effect of advising the plaintiffs of the construction which the defendant proposed to place on the compensation received by the red caps by way of so-called tips. It does not appear that the red caps acquiesced in or consented to the plan set forth in said notice, although they purported to comply therewith in the matter of reporting the amount received by them as tips. However, it appears that the plaintiffs, through their representative, contemplated further negotiations and a later determination of the question either by the Administrator of the Wages and Hours Act or in some judicial proceeding. Neither side contends that the notice, negotiations, and discussions amounted to a contract, and both sides agree that parties could not contract themselves from under the provisions of said Fair Labor Standards Act.

There is no contract; there is no estoppel; but the said notice and correspondence relative to the subject were admitted in evidence solely for whatever light the same might shed on the construction that the parties themselves might have placed on the question of whether these tips were considered as wages or compensation for services rendered by the plaintiffs.

Whenever the amount collected by the red cap from passengers was less than the minimum wage prescribed by Section 6, Fair Labor Standards Act, the defendant paid the red cap the difference, so that from both sources, plaintiffs have received an amount not less than the minimum called for by said Act.

## Conclusions of Law.

The sole substantial question to be determined by the Court is whether or not the sums paid by the passengers to the red caps, either as compensation, as tips, or as gratuities, can be construed to be wages within the intent and purpose of the Federal Wages and Hours Law. Paragraph (m) of Section 203, Title 29, U.S.C.A., Fair Labor Standards Act of 1938, is as follows:

"(m) 'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employee."

In other words, "wages paid to an employee" may include board, lodging, and other facilities, if such other facilities are customarily furnished by the employer to

his employee. The reasonable cost of board, lodging, and the like, may be determined by the Administrator; that is to say, that the Administrator has the right, probably the duty, to determine whether or not the cost of the things charged to the employee as wages is reasonable. The Act does not prohibit the compensation of a wage earner with something other than money paid out of the pocket of an employer, but whatever is charged as a wage must be reasonable. If, however, the "other facilities" happen to be money, there is no "reasonable cost" to be determined by the Administrator. For example, if Jones pays his truck driver 15 cents an hour and permits him to use his truck to haul for other people, whereby the truck driver makes an additional 15 cents an hour, there would be nothing for the Administrator to determine as to the reasonable cost of their arrangement. The main point is, does the truck driver receive the wages required by the Act, and if he received a portion from Jones as fixed wages and the balance from instrumentalities furnished by Jones under circumstances that the matter of reasonable cost was not involved, it would seem there was nothing for the Administrator to determine. It would also seem that the letter of the Act itself contemplates the use of facilities in the matter of payment of wages.

In the instant case it has not been disputed that the Station and the passengers were facilities furnished by the employer without which there would neither be employee nor wages.

The terminal station, with all its facilities, belonged to the defendant. It had the legal right to deny the use of those facilities to persons who would use it as a place of business. It likewise had the legal right to extend a privilege to any one it saw fit who would observe appropriate rules and regulations and otherwise observe the conditions under which the privilege or license was granted. It had the legal right to exact payment from concessionaires using its facilities for profit, and to require the observance of its known and reasonable regulations; or it had the legal right to waive the payment of a consideration.

The services performed by plaintiffs were for the passengers—not the Terminal Company. Their compensation was paid by the passengers—not the Terminal Company. The compensation so paid went to the red cap—not the Terminal Company. Neither the Railroad Company nor the Terminal Company was under any obligation, contractual or otherwise, to carry the passenger's luggage from the train to the taxi, or elsewhere. The passenger merely accepted the red cap's proffered service, and from immemorial custom there perhaps arose an implication that the server would be compensated,—the recipient of the service being the sole judge of the amount of such compensation. The amount of the red cap's earnings would doubtless generally depend on good fortune, good manners, good customers, the number of passengers, the weight and number of parcels handled, the alacrity with which the red cap bestirred himself, and other factors partly within his own control, but entirely beyond the control of the Terminal Company, which latter merely furnished him the opportunity and the facility wherein and wherewith to ply his trade. Because of the foregoing course of dealing, I reject the theory that the plaintiffs' were wage-earning employees within the intent and purposes of the Fair Labor Standards Act. They were working for themselves and the passengers whom they served and whose orders they obeyed in that service.

However, if we concede that they were employees and within the Act, we would still find that, in cash paid directly and through the facilities furnished by the employer, plaintiffs have been paid, in the aggregate, considerably in excess of the minimum wages required by said Act. It would seem immaterial whether the employee was paid by the employer directly or whether he was paid through an instrumentality or facility set up for his use and benefit by the employer. The question is, Did he receive, either directly or indirectly, for his services a sum not less than the minimum required by the Act? It is not a question of who paid him, but of how much he was paid.

It must not be overlooked that the Terminal Company had the legal right, if it had chosen, to have fixed and collected a fee for the service so rendered, and to have received the same, but as an incentive to better service, it allowed the red cap to keep all he collected. If he collected more than the legal minimum wage, it was his good fortune—a reward for his hustling—, but if he failed to collect the minimum provided by the Act the defendant

paid him the difference between the amount collected and the statutory minimum. The red cap stood to win. He could not lose. The company stood only to lose. It could never win. The red cap could often receive for his services more than the minimum wage but never less. Since, therefore, the red cap was compensated by the transfer to him of a legal right of the company to charge and collect fees for these services, the legal effect or result is the same, as far as the red cap is concerned, as if the company had collected these fees and paid the red cap directly instead of indirectly.

The intent of an act is the essence thereof, and the intent thereof should be given effect as against the mere words of an act when the mere words, construed alone, would produce legislative or judicial brigandage. The Court believes that the wording of the Act in defining "wages" provides that things other than the direct payment of money can be used in the payment of wages. The plaintiffs here were paid in money, but in an indirect way—through facilities afforded the plaintiffs by defendant. No question of determination of "reasonable cost" is involved. They were compensated in money which the defendant had the legal right to collect and to keep if it rendered the services through its employees as contended. There can be no substantial difference between compensation for services rendered and wages for services rendered.

Congress intended to secure to employees at least a minimum compensation for the hours of service performed. It never intended that Section 6 of the Act should do more than that. In the present case the plaintiffs, as a group, received out of their relationship, or employment, some $3,000 in excess of the minimum wage required by law. They here seek to be paid again all sums which they have received out of their relationship, or employment, plus an equal amount as liquidated damages, plus attorney's fee. I subscribe wholeheartedly to the real purpose of the Act as I conceive it, but I cannot ascribe to Congress the superlative folly of intending that an employee, under the circumstances of this case, wherein no element of wilfulness is involved, should recover the minimum wage thrice multiplied.

It is, therefore, ordered that the motion for summary judgment for the defendant is sustained. The motion of plaintiffs for a summary judgment in their favor is denied. The complaint is hereby dismissed, and the plaintiffs shall take nothing by their suit. The costs, to be taxed by the Clerk, are adjudged against the plaintiffs.