## MISSEL v. OVERNIGHT MOTOR TRANSP. CO., Inc.

### Civil No. 901.

District Court, D. Maryland.

Feb. 20, 1941.

William O. Tydings and George A. Mahone, both of Baltimore, Md., for plaintiff.

John R. Norris, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This case, which arises under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219, and involves also the Motor Carrier Act, 1935, 49 U.S.C.A. §§ 301–327, is before the court on a motion of the defendant to dismiss the bill of complaint on the ground that it fails to state a claim against the defendant upon which relief can be granted.

The bill of complaint discloses that the defendant is a common carrier of freight in interstate commerce by motor vehicle, and that plaintiff was employed by the defendant or its predecessor (whose assets and liabilities the defendant assumed) as a rate clerk from October 24, 1938, to October 19, 1940, and that during this period he worked certain hours in excess of the maximum work-week stipulated by the Fair Labor Standards Act of 1938, and that for such overtime, defendant did not pay him at the rate of one and a half times the regular rate at which he was employed, as required by this act. Accordingly, the plaintiff brought suit under Section 16(b) of this act, 29 U.S.C.A. § 216(b), and has asked for the relief provided in that section, which reads as follows: "Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

■■ It is clear that this court is one "of competent jurisdiction" to entertain the present suit by virtue of Section 24, Paragraph 8 of the Judicial Code, 28 U.S.C.A. § 41(8), which gives to the district courts original jurisdiction "Of all suits and proceedings arising under any law regulating commerce." The basis for the legislation enacted in the Fair Labor Standards Act is the power of Congress to regulate interstate commerce. The defendant is subject to the provisions of the Motor Carrier Act, 1935, as amended by the Transportation Act of 1940, Sections 15 to 27, inclusive, approved September 18, 1940, 49 U.S.C.A. §§ 301–327. It thus follows that this court has jurisdiction regardless of the amount in controversy or the citizenship of the parties.

The basis of defendant's motion to dismiss the bill of complaint is Section 13(b)(1) of the Fair Labor Standards Act of 1938, which provides as follows, 29 U.S.C.A. § 213(b)(1): "The provisions of section 207 [fixing maximum hours of work] shall not apply with respect to (1) any em-

ployee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

49 U.S.C.A. § 304(a)(1) and (2) provides as follows:

"Powers and duties generally. It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

In interpreting these two inter-related statutory provisions, the Supreme Court, in United States v. American Trucking Associations, Inc., 310 U.S. 534, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345, has declared that the power of the Interstate Commerce Commission under Section 204 (a) (1) and (2) of the Motor Carrier Act, 1935, above quoted, to establish reasonable requirements with respect to the qualifications and maximum hours of service of employees of motor carriers, is "limited to those employees whose activities affect the safety of operation". The Supreme Court did not, however, in this decision attempt to be more specific, or to name precisely what employees fall within this definition. Defendant contends that since the Commission, up to the present time, has issued no regulations with respect to employees falling under the Motor Carrier Act except drivers of motor vehicles, the district courts are without jurisdiction to entertain a suit of this kind; that is to say, that whether a particular employee falls within the excepted class, namely, is one "whose activities affect the safety of operation", is a question of fact which must first be determined by the Commission, and that until such determination is made, it must be assumed that the plaintiff's hours of work are subject exclusively to the jurisdiction of the Commission and, therefore, fall within the exception of the Fair Labor Standards Act, above quoted. Defendant asserts that if this court fails to place the plaintiff in the class exempted from the operation of the Fair Labor Standards Act, and holds that he is entitled to back pay for overtime in accordance with the requirements of that Act, motor carriers throughout the country will be subjected to unexpected and unwarranted payroll expenses, directly contrary to the underlying purpose of the Motor Carrier Act. Defendant invokes the doctrine laid down in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, to the effect that before a court may pass upon the reasonableness of interstate rates established by a carrier, there must first be a ruling by the Commission as to their reasonableness.

With this contention of the defendant we cannot agree. We do not consider that the principle laid down in the Abilene case, supra, is applicable to the situation before us. It is true that the precise question here presented was not adjudicated in United States v. American Trucking Associations, Inc., supra. There, the only question presented and decided was as to the power of the Interstate Commerce Commission under the Motor Carrier Act, 1935, to establish reasonable requirements with respect to the qualifications and maximum hours of service of employees of motor carriers, other than employees "whose activities affect the safety of operation." The suit was originally brought against the United States and the Commission by the Trucking Associations and certain motor common carriers. Shortly after the passage of the Motor Carrier Act in 1935, the Interstate Commerce Commission, on its own motion, proceeded to fix maximum hours of service for "employees whose functions in the operation of motor vehicles make such regulations desirable because of safety considerations." Ex parte No. MC-2, 3 M.C.C. 665, 667. Shortly thereafter the Fair Labor Standards Act of 1938 was enacted containing the provisions above quoted exempting from its terms "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service" pursuant to the provisions of the Motor Carrier Act. Since this exemption directly raised the question as to the extent of the Commission's power or coverage of employees under the Motor

Carrier Act, the Commission again examined the scope of its jurisdiction and in Ex parte MC-28, 13 M.C.C. 481, 489, again reached the conclusion that its powers under "section 204 (a) (1) and (2) is limited to prescribing qualifications and maximum hours of service for those employees * * * whose activities affect the safety of operation." The Wage and Hour Division of the Department of Labor arrived at the same result. Interpretative Bulletin No. 9, Wage & Hour Manual (1940) 168.

Thereupon the American Trucking Associations and others petitioned the Commission to disregard its report and order in Ex parte MC-28, but the Commission reaffirmed its original position, whereupon a three judge district court was petitioned to require the Commission to take jurisdiction and consider the establishment of qualifications and hours of service of all employees of common and contract carriers by motor vehicle. This court reversed the Commission, set aside its order and directed it to take jurisdiction of the appellees' petition. 31 F.Supp. 35. From this action of the lower court a direct appeal to the Supreme Court was granted resulting in the opinion already summarized. The Supreme Court was divided, five to four, in this decision. The lower court had also been divided.

Although an explanation has already been given of what led up to the decision of the Supreme Court in the American Trucking Associations, Inc., case, supra, it is appropriate to give the following complete chronology of events to the present time: (1) December 29, 1937, report and order of Interstate Commerce Commission in Ex parte No. MC-2, prescribing maximum hours of service for drivers only, of common and contract carriers by motor vehicle, 3 M.C.C. 665. (2) June 25, 1938, Fair Labor Standards Act of 1938 passed, 29 U.S.C.A. §§ 201-219. (3) March 25, 1939, the Wage and Hour Division, Department of Labor, issued Interpretative Bulletin No. 9 ruling that all employees of common and contract carriers by motor vehicle other than drivers, are subject to the Fair Labor Standards Act with respect to hours, unless and until an order of the Commission determines to the contrary, Wage and Hour Manual (1940) 168. (4) May 1, 1939, the Interstate Commerce Commission ruled in Ex parte MC-28 that it was without power to prescribe qualifications and maximum hours of service for any employees of common and contract carriers by motor vehicle other than those whose activities affect the safety of operation, 13 M.C.C. 48. (5) May 16, 1939, the Interstate Commerce Commission in its ruling No. 79 confirmed the ruling of the Wage and Hour Division in its Interpretative Bulletin No. 9 of March 25, 1939. (6) May 1, 1940, the Interstate Commerce Commission in Ex parte MC-3 ruled that the same regulations prescribed by it for drivers of common and contract carriers by motor vehicle in Ex parte MC-2, shall apply to drivers employed by private carriers by motor vehicle. (7) May 27, 1940, decision of the Supreme Court in the American Trucking Associations, Inc., supra. (8) June 15, 1940, the Interstate Commerce Commission ordered a reopening, upon the request of the motor carrier industry, of Ex parte MC-2 and MC-3 in the light of the Supreme Court's decision. As yet no further order of the Commission has been passed.

At the outset it is to be noted (1) that the exemption clause in Section 13(b) (1) of the Fair Labor Standards Act embraces only those employees with respect to whom the Interstate Commerce Commission *"has power"* to establish requirements as to qualifications and maximum hours of service; and (2) the Supreme Court has limited such *"power"* to those employees "whose activities affect the safety of operation." It will thus be seen that the basic question upon which a correct decision of the controversy in the present case hinges, is a question quite unlike that presented in the Abilene Cotton Oil Co. case, supra, where the "power" of the Interstate Commerce Commission was conceded, namely, the power to determine the reasonableness of rates. In that case, it was held that when a power is thus given by statute and also the means of executing it are provided, such power can be executed in no other way than that prescribed by the statute. As was said in a later case, Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943: "Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. But ordinarily the determining factor is not the character of the function, but the character of the controverted question and the nature of the enquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a

984

legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases. It is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission."

It is true, as was said recently in Armour & Company v. Alton R. R. Co., 7 Cir., 111 F.2d 913, 918: "The Abilene doctrine, the doctrine of primary jurisdiction, is still more easily stated than applied." But the question now before this court is on principle essentially as much a question of law as was the question decided by the Supreme Court in the American Trucking Associations, Inc., supra. There the question was "what power had Congress granted the Interstate Commerce Commission by Section 204(a) of the Motor Carrier Act"? The court held (310 U.S. pages 546, 547, 60 S.Ct. page 1066, 84 L.Ed. 1345) that Congress had granted no more "than the customary power to secure safety in view of the absence in the legislative history of the Act of any discussion of the desirability of giving the Commission broad and unusual powers over all employees." The court explained that the settled policy of Congress had been consistent in its limitation to legislation with respect to regulation of transportation employees, in matters of movement and safety only. It said (310 U.S. pages 545, 547, 549, 60 S.Ct. page 1065, 84 L.Ed. 1345):

"The Hours of Service Act imposes restrictions on the hours of labor of employees 'actually engaged in or connected with the movement of any train.' The Seamen's Act limits employee regulations under it to members of ships' crews. The Civil Aeronautics Authority has authority over hours of service of employees 'in the interest of safety.' It is stated by appellants in their brief with detailed citations, and the statement is uncontradicted, that at the time of the passage of the Motor Vehicle Act 'forty states had regulatory measures relating to the hours of service of employees' and every one 'applied exclusively to drivers or helpers on the vehicles.' * * * The committee reports and the debates contain no indication that a regulation of the qualifications and hours of service of all employees was contem-

plated; in fact the evidence points the other way. * * *

"The Commission and the Wage and Hour Division, as we have said, have both interpreted section 204(a) as relating solely to safety of operation. In any case such interpretations are entitled to great weight."

■ The aforegoing being true, it is erroneous to say that, in a suit of this kind, the courts may not determine in advance of a ruling by the Interstate Commerce Commission whether a certain type of employee does or does not fall within the limits of the classification fixed by the Supreme Court. It is to be noted that the exemption is limited to those employees whose "activities affect the safety of *operation*." The Supreme Court in American Trucking Associations, Inc., thus concluded its opinion, 310 U.S. page 553, 60 S.Ct. page 1069, 84 L.Ed. 1345: "Our conclusion, in view of the circumstances set out in this opinion, is that the meaning of employees in Section 204(a) (1) and (2) is limited to those employees whose activities affect the safety of operation. The Commission has no jurisdiction to regulate the qualifications or hours of service of any others." The Commission had declined, for want of jurisdiction as it believed, to determine the qualifications and maximum hours of service for any other class of employees. In this position it was upheld by the Supreme Court. In so doing the Supreme Court has definitely indicated who is an employee "whose activities affect the safety of operation." It is said in effect that to meet this definition his activities must relate to the operation or movement of the means of transportation involved. We do not mean to say that the limitations imposed by the Supreme Court necessarily exclude all but drivers or helpers on motor vehicles merely because at the time of the Supreme Court's decision there was no precedent for enlarging the class. But we do say that there is nothing in the Supreme Court's decision that is in the least indicative of the existence of power in the Commission to say that an employee's "activities affect the safety of operation" when such activities as those of the plaintiff in the present case have only a most remote relation to the actual *movement* of motor vehicles falling under the jurisdiction of the act. Plaintiff is a rate clerk. His duties are clerical and have no direct relation to operation, other than through the tenuous argument that since motor vehicles cannot lawfully trans-

port goods in interstate commerce until the rates or charges for so doing have been duly established and exacted, the rate clerk, therefore, performs duties relating to operation, because there can be no operation without rates. By the same argument, almost anyone employed by a motor carrier could be said to be engaged in activities related to operation—one who types or signs a letter relating to safety measures, or prepares or signs an accident report; even the messenger boy to whom such papers are entrusted, or indeed even the janitor or scrub woman, because these make it possible for others to occupy their offices satisfactorily and to write and transmit letters or reports.

In addition to the reasons just mentioned, there is something else which is at least very persuasive. It is this: As already shown, after the Wage and Hour Division of the Department of Labor, on March 25, 1939, ruled that all employees of common and contract carriers by motor vehicle, other than drivers, would be subject to the Fair Labor Standards Act with respect to hours, unless and until an order of the Commission determined to the contrary, the Commission itself formally confirmed this ruling on May 16, 1939 (Ruling No. 79). Such action is entitled to great weight. It indicates that the Commission must at least have entertained some doubt as to its power to include, within its ruling, even loaders and helpers. A fortiori, this weakens any argument based upon the assumption that the Commission has power, though unexercised, over employees completely removed from the functions of operation.

The conclusion here reached is in no sense weakened by the fact, already noted, that the Commission has reopened, and still has under advisement, the question as to whether *any* employees other than drivers of motor vehicles should be declared to be subject to the Commission's regulations. It may well be that the Commission may decide that certain other types of employees, such as loaders or even helpers if engaged in operative functions, should be brought under its jurisdiction, and such would be an exercise of granted power. In the Abilene and like decisions, the question was not, as here, whether *power* existed in the Commission. Such was conceded. The question there was as to the *exercise* of the power. Suppose the Commission should ultimately decide that the activities of rate

clerks and of all other clerical workers employed by motor carriers subject to the Act do affect the safety of operation. We must assume that such would be contrary to the Supreme Court's ruling, because, as we conclude, the Commission has no *power* as a result of what the Supreme Court has decided, to establish regulations with respect to such persons. To be sure, after the Commission has fixed a rate or classification pursuant to the Abilene doctrine, courts may strike it down as unreasonable or discriminatory. But in such case, the primary jurisdiction—the *power*—to fix *some* rate or classification would be conceded; whereas in the other case supposed, jurisdiction would have been asserted with respect to persons over whom there never was any *power*. In the one case, it would be abuse of granted power; in the other, exercise of power never, in fact, granted at all.

Finally, we are not unmindful of the fact that our present ruling may have the result of imposing unexpected additional expense upon motor carriers, and also, that since courts have power to determine when "safety of operation" is, in fact, affected there may be a variation from time to time in the different decisions upon this point. Indeed, the lower court in its opinion, and the minority Justices of the Supreme Court by their adoption of the reasons in that opinion, in the American Trucking Associations case, supra, were firmly of the view that stabilization of labor conditions as applied to the motor carrier industry was necessary, and that it was not unreasonable to assume that Congress, aware of the problem and of the need for uniformity, chose to place upon the Commission full power to solve the problem. But a majority of the Supreme Court has decided otherwise, and once it be clear, as we are satisfied it is, that a determination of whether the *power* is actually possessed by the Commission is essentially a judicial function, the present plaintiff, and others in a like situation, are entitled to have their status under these statutes promptly and definitely determined. Under defendant's theory the power of the courts to do this may be indefinitely suspended, which means a suspension of the operation of both statutes with respect to such rights as employees, like the plaintiff, may have under them.

If it be said that the plaintiff should first petition the Commission and obtain its ruling, as the association of truckmen and

various common carriers did·in the proceedings which led up to the decision of the Supreme Court in the American Trucking Associations case, supra, suffice it to point out that the plaintiff's position is opposite to that of those petitioners. He does not want the Commission to do anything. His suit is not brought under the Motor Carrier Act, but under the Fair Labor Standards Act. Both of these statutes have been upheld by the Supreme Court. See Maurer v. Hamilton, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969; United States v. Darby Lumber Co., 61 S.Ct. 451, 85 L.Ed. ——, and Opp Cotton Mills v. Administrator of Wage, etc., 61 S.Ct. 524, 85 L.Ed. ——, decided February 3rd, 1941. In the case first mentioned, the Commission had made no regulation concerning sizes and weights of motor vehicles or their loads. Nevertheless, the Supreme Court, in a suit which originated in a State Court to enjoin the enforcement of a State statute, held that the Commission had no regulatory power in this particular field, under Section 204 of the Motor Carrier Act which we have been considering. The analogy is clear and supports the conclusion we have reached in the present case.

For the reasons given, defendant's motion to dismiss the bill of complaint must be overruled.