## TRAVIS v. RAY.
### No. 96.

District Court, W. D. Kentucky, at Paducah.
Oct. 9, 1941.

Albert Karnes, of Paducah, Ky., for plaintiff.

J. C. Speight, of Mayfield, Ky., for defendant.

Walter T. Nolte, Gerard D. Reilly, Sol., and Irving J. Levy, Asst. Sol., all of Washington, D. C., Chas. H. Livengood, Jr., of Nashville, Tenn., and Jacob D. Hyman and George W. Crockett, Jr., both of Washington, D. C., for United States Department of Labor.

MILLER, District Judge.

The plaintiff Asher Travis brought this action to recover unpaid minimum wages claimed by him to be due under the provisions of Section 6 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The defendant's answer did not deny the allegations of the petition, except to claim that the compensation paid the plaintiff, on an agreed commission basis, over the entire period of his employment, exceeded the amount called for by the act. The action was referred to a special master for the purpose of determining the amount of wages which the plaintiff was entitled to under the provisions of Section 6, and the amount of compensation which he had actually received from the defendant. The master filed a report to which the plaintiff has taken exceptions, contending that the method used by the master in computing the wages due the plaintiff under Section 6 of the Act was erroneous. The matter is before the court on these exceptions. Permission was given to the Administrator of the Wage and Hour Division, U. S. Department of Labor, to file brief as amicus curiae, which has been done.

The plaintiff was employed by the defendant as a bus driver on the defendant's bus lines. He operated a bus between Paducah, Kentucky, and Gilbertsville, Kentucky, from September 5, 1939, through December 23, 1939. He operated a. bus between Paducah, Kentucky, and Hopkinsville, Kentucky, from December 31, 1939, through March 30, 1940. On the Gilbertsville run he made connections at Gilbertsville with another bus which started its run in another state and took transfers of both passengers and freight from this other bus. On the Hopkinsville run he hauled both passengers and freight destined for another state. While working on the Gilbertsville run his schedule was as follows:

He reported at 1:15 p. m. and left Paducah for Gilbertsville at 1:30 p. m.; arrived at Gilbertsville 2:30 p. m.; left Gilbertsville for Paducah at 3:30 p. m.; arrived at Paducah 4:30 p. m.; left Paducah for Gilbertsville at 4:30 p. m.; arrived at Gilbertsville at 5:30 p. m.; left Gilbertsville for Paducah at 5:30 p. m.; arrived at Paducah 6:30 p. m.; left Paducah for Gilbertsville at 8:30 p. m.; arrived at Gilbertsville at 9:30 p. m.; left Gilbertsville for Paducah at 12:30 a. m.; arrived at Paducah 1:30 a. m.; after unloading passengers and baggage, putting up the bus and making out reports quit work about 2 a. m. It will be noticed that this schedule included two waiting time periods at Gilbertsville of one hour and three hours, respectively, and one waiting-time period at Paducah of two hours. There was no bus station at Gilbertsville, and the bus was parked near the Gilbertsville Dam, which was under construction. During the night-waiting period at Gilbertsville the plaintiff stayed near the bus and spent most of his time trying to get some sleep in the bus. On the Hopkinsville run the plaintiff left Murray, Kentucky, at 7 p. m. Arrived at Hopkinsville at 9 p. m.; left Hopkinsville at 9:00 p. m.; arrived at Paducah at 11:45 p. m.; and after putting the bus up quit work at about 12 o'clock midnight. The next morning at 6:30 a. m. he drove the bus to Murray, Kentucky, which required about an hour's drive. The contract of employment between the plaintiff and defendant provided for compensation at the rate of 15% of the gross receipts, with the defendant furnishing the motorbus and the expenses. During part of the time the defendant paid a dollar a day extra as a bonus.

The special master suggested in his report that the employment was not covered by the provisions of the Fair Labor Standards Act because of the exemption provided by Section 13(a) (9) which states that the provisions of Section 6 shall not apply with respect to any employee of a street, suburban, or interurban electric railway, or local trolley or motorbus carrier, not included in other exemptions contained in this section, pointing out that it was admitted by all the parties that the defendant operated a motorbus carrier. For the purposes of his report, however, he computed the amount due the plaintiff if the act applied. In doing so he excluded the waiting periods referred to in the above schedules and also considered the entire employment of September 5, 1939, through March 30, 1940, as a unit, averaging the total amount received by the plaintiff during that period against the total number of hours worked, which showed a deficiency in compensation of one and one-half cents an hour. Both the plaintiff and the Administrator contend that the exemption does not apply, that the waiting periods in the schedule should be included in the number of hours the plaintiff was employed, and that a period of time no longer than a work-week should be used as the unit in determining whether or not the

**8**

minimum wage had been paid in each unit of time.

The petition alleges that the defendant was at the times stated engaged in commerce in the operation of an interurban bus line between various cities in Kentucky and Tennessee, carrying both passengers and freight, and that the plaintiff was employed as a bus driver on these lines. These allegations are not denied by the defendant's answer; nor does the answer assert any exemption from the provisions of the act. Since such allegations stand admitted it follows that the plaintiff was not an employee of a local trolley or a motorbus carrier. On the contrary, he was an employee of an interurban motorbus carrier, and taking part in interstate transportation. Harrison v. Kansas City Terminal Ry. Co., D.C., 36 F.Supp. 434; Williams v. Jacksonville Terminal Co., D.C., 35 F.Supp. 267; Id., 5 Cir., 118 F.2d 324; Missel v. Overnight Motor Transportation Co., D.C., 36 F.Supp. 980. The exemption contained in Section 13(a) (9) of the Act is not applicable.

The evidence shows that the plaintiff voluntarily agreed that his compensation be paid in the form of commissions which necessarily meant that it would vary in amount from week to week; that the plaintiff computed the amount that he was entitled to under his contract and received payment in full from the defendant; and that no claim was made at the time that he was entitled to any additional compensation. But such a contract of employment and such a method of payment does not remove the case from the provisions of the statute. The statute is mandatory upon the employer, not permissive. When the law became effective it imposed the duty upon the employer to pay the employee the minimum wage provided, regardless of the method of making the payment. The compensation paid must total the sum of hours worked times the minimum rate per hour for the period under consideration, regardless of whether it was paid in the form of a weekly wage or a commission. The emphasis of the statute is upon the amount paid not the method by which it is paid. Neither the employer nor the employee have the right to agree by contract that the amount actually paid and received shall be less than the minimum amount specified by the statute. The statute imposes a minimum which must be complied with. Williams v. Jacksonville Terminal Co., supra; Morgan v. Atlantic Coast Line R. Co., D.C.,

32 F.Supp. 617. Nor is it permissible for the employee to give a valid release of his rights against the employer in consideration of receiving payment of an amount less than that provided by the statute. "The statute was passed to protect them against the economic pressure it was assumed they would be unable to resist, if offered a job. To this end it was as necessary to deny them the power to bargain away their privilege after they had performed their labor, as before." United States v. Morley Construction Co., 2 Cir., 98 F.2d 781, 788.

I am of the opinion that the waiting periods between trips should be included in the total number of hours for which the plaintiff was employed. It is of course possible for an employer to make a number of independent contracts of employment, each one of which calls for employment at a different period of time, or to make one contract calling for separate and independent jobs at different times. Under such a contract the time between the two working periods would not be included. But the present situation is not of that nature. Considering all of the circumstances surrounding the numerous trips between Paducah and Gilbertsville it is quite evident that the plaintiff was expected to be on the job from 1:15 p. m., when he reported for duty, until 2 a. m. when he finally put the bus in the garage and went home. Although he was not actually operating the bus every minute of this period, yet he had to hold himself available and be ready for duty when the schedule called for another run to be made. The bus was available to receive passengers during the interim. Most of the layover time was at Gilbertsville which was merely a stopping point. It was neither the starting point of each day's run nor the final resting place of the bus when the day's work was over. There was no stationhouse at Gilbertsville; it was not where the plaintiff made his home. The waiting time was not long enough to permit him to go elsewhere or to engage in other activities. Minneapolis & St. L. R. Co. v. United States, 8 Cir., 245 F. 60. The evidence shows that it was at least an implied term of the contract that the plaintiff remain in the immediate vicinity of the bus in order to protect it and to take care of passengers who might arrive during the waiting interval. Performing the duties of a watchman, or being on duty subject to call if one's service should be required, is just as much employment in the legal sense of the term

as actual labor. Missouri, K. & T. Ry. Co. v. United States, 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144; Chicago, R. I. & P. Ry. Co. v. United States, 8 Cir., 253 F. 555.

The statute does not expressly provide for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided. It is quite often the case that an employee, working on commission basis, or a piece-work basis, may make more than the minimum wage during some of the hours he works and less than the minimum wage during the other hours he works. The average may be more than the statutory minimum amount. If the act is given a very strict construction such averaging is probably not permitted. Section 6 provides that every employer shall pay to his employee wages "not less than 25 cents an hour." This could very logically be construed as meaning not less than 25 cents for each hour considered separate and apart by itself. The act does not prevent the employer from paying more than the minimum for each hour, it merely fixes a minimum. No provision is made for crediting any excess in one hour against a deficit in another hour. However, the Wage and Hour Division in administering the act has adopted the work-week as the schedule period for determining whether or not an employee has received wages at a rate not less than the statutory minimum. The interpretation of a new statute by the Department charged with its administration, while not controlling upon the court, is entitled to great weight. United States v. American Trucking Ass'n, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. See, also, United States v. Darby, 312 U.S. 100, at page 118, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, note 2. Such a construction in the present case is justified by the facts. The plaintiff was paid his wages on a weekly basis, making weekly settlements with the defendant. The rate per hour should be determined by treating each work week as a separate unit of time, the excess payment in one work week, if any, not being credited against any deficit which may exist in another.

The exceptions to the master's report are sustained, and the amount due the plaintiff will be recomputed by the master in accordance with the foregoing principles.