## GILLETTE v. ROCKLAND COACHES, Inc.

District Court, S. D. New York.
June 7, 1943.

618

Ernest Mahler, of New York City, for plaintiff.

Lexow & Jenkins, of Suffern, N. Y. (David H. Moses, of Feura Bush, N. Y., of counsel), for defendant.

BRIGHT, District Judge.

Defendant moves for an order (1) dismissing the complaint as insufficient in law, and (2) for summary judgment under its fifth defense. Plaintiff counters with a motion to strike the fifth defense as insufficient upon the facts shown.

The action is brought to recover overtime under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The complaint alleges that at the times mentioned therein plaintiff was employed by defendant "in the furtherance of its business of the interstate transportation of passengers for profit", in the defendant's garage plant at Spring Valley, New York, where he performed certain services (a) in checking and resetting ticket machines in 86 busses owned and operated by defendant, (b) in work at gas pumps fueling busses, (c) keeping records of oil supplied to busses, (d) checking oil and tires, (e) furnishing to drivers bridge tolls and tickets, (f) changing insurance stickers on busses, and (g) fueling owners' cars.

■ It is claimed that the complaint does not allege plaintiff's engagement in interstate commerce, a requisite in order for him to claim overtime under the Fair Labor Standards Act, which requires that he be "engaged in commerce or in the production of goods for commerce". 29 U. S.C.A. § 202. I think the allegations in the complaint are sufficient to present the question to the trial court and that part of the motion is denied.

The fifth defense is that at the times of plaintiff's employment "defendant was and is a local motor bus carrier, as defined in section 13, subdivision (a)(9) of the Fair Labor Standards Act of 1938, and as such employee, was not covered by or subject to the provisions of sections 6 and 7" of that Act.

Section 13 (numbered 213 in 29 U.S.C. A.) relates to exemptions, and provides, so far as material: "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (9) any employee of a street, suburban, or interurban electric railway, or local trolley or motor bus carrier, not included in other exemptions contained in this section."

The only other exemptions contained in that section, which are at all applicable or interesting now, are those found in subdivision (b) (1), which relates to employees "with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49."

That section 304(a) (1) authorizes the Interstate Commerce Commission to regulate common carriers by motor vehicle, among others, with respect to "qualifications and maximum hours of service of employees, and safety of operation and equipment."

■ Defendant clearly is a common carrier by vehicle within this section and the definition of that phrase as contained in section 303(a) (14) of that act; and the Interstate Commerce Commisson is authorized to regulate the qualification and maximum hours of defendant's employees, certainly insofar as they are connected with the safety of operation. United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. As to such employees the provisions of the Fair Labor Standards Act relating to maximum hours and overtime have no application. Southland Gasoline Co. v. Bayley (Richardson v. James Gibbons Co.), 63 S.Ct. 917, 87 L. Ed. ——, decided May 3, 1943.

■ Congress evidently intended that the Fair Labor Standards Act should have a limited effect. It is not coextensive with the limits of the power of Congress over commerce. A. B. Kirschbaum Co. v. Wall-

ing, 316 U.S. 517-523, 62 S.Ct. 1116, 86 L. Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564-570, 63 S.Ct. 332, 87 L. Ed. ——. With reference to the question involved here, this limitation is further emphasized, in my judgment, by the obvious purpose to free motor bus and other interstate carriers, in many respects, from the provisions of the act. In addition to the exemption under subdivision (b)(1) of section 213 of the act, it grants a further exemption as to employees of a local motor bus carrier "not included in other exemptions contained in this section."

■ Here both parties, by their motions, pose the question as one of law upon practically undisputed facts—Is defendant a "local motor bus carrier?" In seeking the answer, it seems obvious that such a carrier cannot be one whose operations are solely intrastate, because it and its employees would not then be engaged in "commerce" as that term is used in the Fair Labor Standards Act. The words must refer to a "local motor bus carrier" engaged in interstate commerce. "Local" would not, therefore, be confined to operations in a single county or state, but they would necessarily have to cross state lines. As used it seems to me to have a most general connotation. This is emphasized by the phraseology used in section 303(b) (8) of Title 49 U.S.C.A., under which act the Interstate Commerce Commission was given jurisdiction over carriers by motor vehicle. There the power of the commission to regulate maximum hours of service of employees was limited, unless and to the extent that the commission should find it necessary to carry out the policy of Congress enunciated in section 202 of that act, as to transportation of passengers or property in interstate commerce within a zone adjacent to and commercially a part of a municipality or municipalities, under certain circumstances. There the limitation applied to a zone adjacent to and commercially a part of such municipality. Here much more general language is used. The word "local" here is not confined in its geographical aspect to operations adjacent to or within a commercial zone. It is used with reference to operations in "commerce".

Upon a trial of this case recently had, five questions were submitted to the jury— (1) as to how many hours per week defendant employed plaintiff, (2) whether plaintiff was employed in a bona fide executive capacity, (3) whether employed in a bona fide administrative capacity, (4) whether defendant was a local motor bus carrier, and (5) did plaintiff devote a substantial part of his time in activities which directly affected safety of operation? The jury, after a five day trial, agreed upon an answer to the first question, disagreed as to the others, and were discharged. The parties, obviously, desire to avoid a retrial.

Defendant operates eight routes in its business in which it employs about eighty-six busses. Four of these routes are entirely within Rockland County, New York. The other four, the longest of which covers approximately thirty-five miles, are between municipalities in Rockland County, Bergen County, New Jersey, and New York City. All of the operations are within an air distance of about twenty-five miles from New York City. More than seventy-five per cent. of the passengers carried are commuters to New York City and the balance consist of school children, shoppers and the general public. Fares are paid in cash or by commutation or trip tickets which may be purchased at certain places on the routes, and at the terminals in New York and in Rockland County. The fares charged are based upon zones or with reference to the distance traveled. Interstate passengers are picked up and discharged along the routes; and except where there exist restrictions contained in prior competing franchises, intrastate passengers are received and discharged. The busses used upon the lines from and to the New York City terminals are larger and more commodious than those used upon the routes operated solely within Rockland County; and the drivers of busses on the last mentioned routes receive less pay than those operating busses on the former. The municipalities, towns, villages and localities served cannot be said to be contiguous. But they are clearly within the suburban and business zone of New York City. Attached to the moving papers are three maps. One of them is of the "New York Retail Area" as defined by the Merchants Association of New York, and shows the retail and food delivery, the chain store control, and the railroad commutation, zones of that city. All of those zones include the area covered by the defendant's bus operations. The second map, prepared by the same association, of the "New York Metropolitan District", shows an area within a forty mile radius from the City Hall in New

York, approved by the United Census Bureau as one "within which the conditions of manufacturing, trade, transportation, labor and living, in brief, the daily economic and social life, are predominantly influenced by the central city," and in which was taken into account factors such as the daily commuting zone, retail store deliveries, local telephone service, relative density of population, etc., most weight being given to the daily commuting zone. The area of the defendant's operations is all within this so-called Metropolitan District. The third map is contained in the report compiled in 1940 by the United States Bureau of the Census with reference to the New York-Northeastern New Jersey Metropolitan District. That report states that the district is not a political unit but "tends to be a more or less integrated area with common economic, social, and, often, administrative interests." It includes Rockland and Bergen Counties.

█ It is clear to me that these two counties are suburbs and environs of New York City, and are clearly a part of its metropolitan district. The bulk of the business of the defendant is the transportation of people whose business, educational and recreational interests are transacted and conducted in New York City. The locality of its operations are within the area of that metropolitan district. It is, in my opinion, a local motor bus carrier.

The four cases submitted by the parties are conflicting and not particularly helpful. Valley Motor Transit Co. v. Conley, D.C., 49 F.Supp. 751, decided March 17, 1943, and now, I am informed, on appeal, is favorable to the contention of defendant in a case very similar in facts to this. Travis v. Ray, D.C., 41 F.Supp. 6, decided October 9, 1941, and Wonham v. Pennsylvania Greyhound Lines,[1] D.C.E.D.Pa., decided April 2, 1941, are to the contrary. In the Travis case, the bus line carried passengers and freight between cities in Kentucky and Tennessee and was held to be an interurban carrier in interstate transportation and not a local carrier. The particular factual situation here involved does not seem to have been there discussed or presented. The Wonham case involved a Greyhound bus line plying between the states of Pennsylvania, New Jersey and New York, and I can readily agree that such a bus line would not be a

local one. Mingee v. Dixie Greyhound Lines, decided May 16, 1941, and apparently not reported, the facts are not stated in the briefs, was an oral decision, and involved a Greyhound operation which ordinarily would be interstate and not local.

There is one other case, interesting because it involves the very area in question here—Charles Noeding Trucking Co. v. United States, D.C., 29 F.Supp. 537. There suit was brought to enjoin an order of the Interstate Commerce Commission made under section 303(b)(8) of 49 U.S.C.A. referred to above, defining a zone adjacent to and commercially a part of New York City. The three judge court there were, of course, bound by the factual findings of the Commission which were supported by the evidence; and the findings were authorized by the statute. Here, of course, I am not confronted by any administrative findings, nor by any clear statutory direction. Many of the facts here shown were also proved in that case. The commercial zone there erected by the Commission included part of the area now in question but not all of it. It was found that the policy of Congress enunciated in Section 202 of the Transportation Act required that regulatory provisions should be applied to "interterminal" transportation—between municipalities or zones not commercially a part of one another—and that transportation "intraterminal" in character—motor carrier operations of the local or urban cartage type—should escape supervision. Concretely the Commission excluded Newark from the New York commercial zone because each possessed its own manufacturing centers, shipping facilities and suburbs. Had the Commission increased or reduced the commercial zone, the decision of the court as to the facts would, doubtless, have been the same. The case, of course, is not decisive here. It is interesting as revealing that part of the area here involved is within the New York City commercial zone and exempt from regulation by the Interstate Commerce Commission. Here commercial proximity is not the question involved. The question is whether the operations, two of the terminals of which are in New York City, are local and I decide they are.

The motion of the plaintiff to strike out the fifth defense is denied, as is also the

---

[1] No opinion for publication.

defendant's motion to dismiss the complaint. Its motion for summary judgment is granted. Settle order on notice.