WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. FRANK et al.

No. 724.

District Court, W. D. Kentucky, Louisville Division.

Sept. 11, 1945.

Douglas B. Maggs, Sol., of Washington, D.C., Jeter S. Ray, Regional Atty., of Nashville, Tenn., Geo. W. Jansen, Supervising Atty., of Washington, D. C., and David V. Manker, Atty., of Nashville, Tenn., all of U.S. Dept. of Labor, for plaintiff.

Morris & Garlove, of Louisville, Ky., for defendants.

MILLER, District Judge.

The plaintiff, L. Metcalfe Walling, Administrator of the Wage and Hour Division, United States Department of Labor, brought this action to enjoin the defendants, who are engaged in the manufacture, sale and distribution of men's topcoats and overcoats, from violating provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. In a stipulation filed on May 9, 1945, the defendants admitted their failure to comply with the provisions of the Act with respect to many of their employees and agreed to the entry of a judgment against them restraining such further practices on their part. The stipulated facts and the tendered agreed conclusions of law with reference thereto are adopted by the Court with respect to that portion of the case. The stipulation provides that the Court shall make additional findings of fact and conclusions of law with respect to two remaining issues not covered by the stipulation, which is now done.

### Findings of Supplemental Facts

1. The defendants are engaged in the manufacture, sale and distribution of men's top coats and overcoats at their establishment at 709 West Market Street, Louisville, Kentucky. Their employees involved in this phase of the case operate sewing machines, are employed by the defendants on a piecework basis, and are paid for various "operations" at rates ranging from fifty cents to $4.10 per hundred. Each employee is required to take care of the machine assigned to her, to clean it and oil it. The employee spends approximately ten minutes each day in doing such cleaning and oiling. Ordinarily the employee arrives at the plant at about 7:45 a.m. and punches the timeclock before proceeding upstairs to the room where she works. The employee usually goes to the dressing room and changes her clothes and then checks over the machine, cleaning, dusting and oiling it, before the current is turned on at 8:00 a.m. There is a 30-minute lunch period at Noon. Sometimes the employee spends part of the lunch period in cleaning and oiling her machine, particularly if she has not done so before starting work in the morning. Work stops at 4:30 in the afternoon. The employee does not work on Saturday unless an accumulation of work requires it, which is very infrequent. The work day is computed by the defendants as beginning at 8:00 a.m. rather than from the time shown by the timeclock.

2. As the various "operations" are performed by the piecework employee a ticket is detached from the garment for each item or "operation" performed. Approximately 700 tickets on an average are detached by the worker each week. The employee is required to sort these tickets and attach them to a gummed record sheet and compute the amount of piecework wages due. This work is performed weekly by the employee outside the regular working hours, usually at home on Sunday afternoon. Each Monday the previous week's tickets and computations are turned in to defendants who check them and pay the employee. Ordinarily, approximately three hours each week are spent by the employee in this work.

3. The time spent in cleaning and oiling their machines and sorting and attaching piecework tickets and computing piecework wages due them is not recorded by defendants and is not counted by defendants as hours worked. The employee is guaranteed a minimum of fifty cents an hour for the 40-hour work week consisting of five days of eight hours each, as above computed. At times the piecework does not total as much as fifty cents an hour for the 40-hour week, but in such instances the employee nevertheless receives the guaranteed minimum of fifty cents an hour. In the weeks in which the employee works more than 40 hours she is paid not less than time and a half for all hours in excess of forty.

4. With respect to the dusting and oiling of machines, it is an established custom in the trade that each worker take care of her machine, and compensation for such work is included under the established piecework rates. The established piecework rates also allow for the time which would be consumed in the pasting of the work tickets on gummed sheets, and compensation for such work is also included under the established piecework rates. The piecework rates are established by contract between the employees' Union and the defendants.

### Conclusions of Law and Memorandum

The stipulation provides that under the foregoing facts the only issues submitted to the Court are as follows:

(a) Whether or not time consumed by defendants' employees in cleaning and oiling their machines is working time which should be so recorded by defendants and which should be counted as hours worked for the purposes of determining compliance with Section 6 of the Act and computing overtime compensation under the provisions of Section 7 of the Act.

(b) Whether or not time consumed by defendants' pieceworkers in sorting and attaching to record sheets work tickets detached by such pieceworkers from garments upon which they have worked, where said record sheets are necessary for defendants' use in making up pay rolls, is working time which should be so recorded by defendants and which should be counted as hours worked for the purposes of determining compliance with Section 6 of the Act and computing overtime compensation under the provisions of Section 7 of the Act.

Jurisdiction of the parties hereto and of the subject matter of this action exists under Section 17 of the Act, Section 217, 29 U.S.C.A.

■■ The Act provides that no one who is engaged in commerce or in the production of goods for commerce, shall be employed at less than the minimum hourly wage prescribed or for a work-week longer than the prescribed hours unless the employee receives compensation for excess hours at a rate not less than one and one-half times the regular rate. Sections 6 and 7 of the Act; Sections 206 and 207, 29 U.S. C.A. Under Section 3(g) of the Act the word "employ" "includes to suffer or permit to work." The questions involved appear controlled by the two decisions of the United States Supreme Court in Tennessee Coal Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, and Jewell Ridge Coal Corporation v. Local No. 6167, United Mine Workers of America, 1945, 324 U. S. ——, 65 S.Ct. 1063. These two cases considered whether or not underground travel in iron ore mines and in Bituminous coal mines constituted work or employment within the meaning of the Fair Labor Standards Act of 1938. Both cases held that underground travel time from the portal to the working face of the mine constituted work or employment for which compensation must be paid under the Act. They defined work or employment under the Act "as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." [321 U.S. 590, 64 S.Ct. 703.] They specifically held that it was not necessary that such travel time or work be directly productive in its nature. Both the oiling of the machines and the sorting and attaching the work tickets are activities included in the foregoing definition. The fact that the sorting and attaching work tickets takes place at the employees' home without immediate supervision by the employer does not change the result. The Circuit Court of Appeals for this Circuit so held in Walling, Adm'r, v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60.

Defendants concern themselves chiefly in attempting to differentiate the facts in the two Supreme Court cases referred to from the facts in the present case, pointing out the hazardous nature of the underground travel in the two mine cases as compared with the relatively quick and simple operations involved in this case. Although the Court stressed the character of work involved in the two mine cases, yet it seems clear from the opinion and from the wording of the Act itself that there is no requirement that the work be hazardous in order to constitute work within the meaning of the Act. The definition above referred to does not include any such requirement.

■ Defendants also contend that the Act should not be so construed as to invalidate or supersede any agreement between the employer and the employees arrived at by the practice of collective bargaining through the employees' Union. This same contention was urged upon the Supreme Court in the two cases above referred to and rejected by the majority opinion in each instance. See Tennessee Coal Company v. Muscoda Local, supra, 321 U.S. 590, at page 602, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014. The majority rulings in these two cases are vigorously dissented from by several members of the Court and these dissenting views are urged upon us by the defendants in this case. However, the construction given to the Act by the majority of the Court should of course be followed and applied in a proceeding of this kind in the District Court.

■ The time consumed by defendants' employees in cleaning and oiling their machines and the time consumed by defendants' piece workers in sorting and attaching to record sheets work tickets detached by such piece workers from garments upon which they have worked is work time or hours worked and should be counted for the purpose of determining compliance with Section 6 of the Act and computing overtime compensation under the provisions of Section 7 of the Act. See also Walling v. Blue Mt. Logging Co. No. 380, W.D. Wash. Oct. 13, 1942 [1];Travis v. Ray, D.C.W.D.Ky., 41 F.Supp. 6; Walling v. Allied Messenger Service, D.C.S.D. N.Y., 47 F.Supp 773; Walton v. Southern Package Corporation, 320 U.S. 540, 64 S. Ct. 320, 88 L.Ed. 298.

---

[1] No opinion for publication.