Dennis BENSON, Michael Clarey, John Zimmer, William Riddock, Obrad Zivojnovity and Patrick Clayton, Plaintiffs,

v.

UNIVERSAL AMBULANCE SERVICE, INC., Defendant.

Civ. A. No. 79–70906.

United States District Court,
E. D. Michigan, S. D.

Sept. 3, 1980.

Leonard A. Henk, Warren, Mich., for plaintiffs.

Wilfrid L. Burke, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

■ Plaintiffs commenced this action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), to recover unpaid overtime wages. Plaintiffs allege that the defendant violated Section 7(a)(1) of the Act, 29 U.S.C. § 207(a)(1), which mandates compensation for employees at "a rate not less than one and one–half times the regular rate" of pay for all hours worked in a work week which exceeds forty hours. Plaintiffs seek both legal and equitable relief as provided for in 29 U.S.C. § 216(b).

■ Initially, defendant challenges the jurisdiction of this court over plaintiffs' claims under the Fair Labor Standards Act. Specifically, defendant contends that plaintiffs are exempt from coverage under the wage and hour provisions of the Act since they fall within the exclusive jurisdiction of the Secretary of Transportation under the Motor Carriers Act, 49 U.S.C. § 304.[1] This

1. Defendant's argument is based upon 29 U.S.C. § 213(b)(1) which provides:

(b) The provisions of section 207 of this title shall not apply with respect to—

Court rejects defendant's challenge to its jurisdiction.

The plaintiffs and the defendant are engaged in a business which has a substantial effect on interstate commerce. Plaintiffs responded to emergencies on streets and highways over which flows significant commerce between the states. As an integral part of their work, plaintiffs remove obstructions from such streets and highways as to enable commerce to move freely. Plaintiffs transport sick and injured persons to and from airports for interstate travel to other hospitals, clinics, or facilities. Plaintiffs also respond to calls involving persons from other states staying at local hotels and restaurants, and in doing so contribute materially to commerce between the states. Consequently, this Court concludes that the ambulance service is so closely related to the movement of commerce and the functioning of its instrumentalities as to be a part of it. Accordingly, this Court finds that it has jurisdiction over the plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 216(b). *Wirtz v. A–1 Ambulance Service Inc.*, 299 F.Supp. 197, 201 (E.D.Ark. 1969); *Kelly v. Ballard*, 298 F.Supp. 1301, 1305 (S.D.Cal. 1969); *Duffy v. Oele*, 274 F.Supp. 307, 311 (W.D.Mich. 1967); *Barnes v. Silva*, 61 L.C. 44, 005 (N.D.Cal. 1969).

▮ The plaintiffs are not exempt from the wage and hour provisions of the Act by virtue of the Motor Carriers Act, 49 U.S.C. § 304, which makes it the duty of the Secretary of Transportation to regulate "common carriers by motor vehicle." The administrative regulations of the Motor Carriers Act make clear that the exemption of an employee from coverage under the Fair Labor Standards Act extends only to those who: (1) are employed by carriers whose transportation of passengers and property is subject to the jurisdiction of the Secretary of Transportation under Section 204 of the Act, as amended, 49 U.S.C. § 304; and (2) engage in activities which directly affect the safety or operation of such motor vehi-

(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of

cles used in interstate commerce, 29 CFR 782.2.

▮▮ Defendant is not a "carrier" within the letter and spirit of the Motor Carriers Act, *Boutell v. Walling*, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946), nor are plaintiffs engaged in activities which directly affect the safety or operation of motor vehicles as intended by the Act. *Levinson v. Spector Motor Service*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947); *United States v. American Trucking Assoc.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). The title and language of the Motor Carriers Act, its legislative history, and its administrative interpretation, 49 CFR 390.1–390.45, all demonstrate that Congress did not intend to vest the Interstate Commerce Commission (or now Secretary of Transportation) with jurisdiction over employees other than of carriers actually involved in interstate cartage, such as those in the trucking industry. It would certainly be a distortion of both the Motor Carriers Act and the Fair Labor Standards Act to deny plaintiffs jurisdiction in accordance with defendant's contentions. See *Boutell v. Walling*, 148 F.2d 329 (C.A.6, 1945), *affirmed* 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946).

The operative facts of this litigation are not in dispute. Plaintiffs worked a 72–hour work week, divided into three 24–hour shifts. Plaintiffs allege that they were not paid overtime wages for the 32 hours they worked each week which was in excess of the statutory 40–hour work week. Defendant alleges that an implied agreement existed with each of the plaintiffs to exclude from each 24–hour shift worked, 8–11 hours of unpaid sleeping time, and three hours of unpaid eating time. Plaintiffs further allege that even if such an implied agreement existed, they did not receive sufficient periods of uninterrupted sleep or mealtime as to allow defendant to consider such time as non–working hours under the wage and hour regulations.

service pursuant to the provisions of section 304 of Title 49;

Having determined that this Court has jurisdiction over this matter, there are two narrow issues to be decided:

I. Whether there existed an implied agreement between the parties to exclude from each 24–hour shift worked, 8–11 hours of unpaid sleeping time and/or three hours of unpaid eating time?

II. Whether, even it such an implied agreement did exist between the parties, the plaintiffs' job duties made it impossible for them to receive either five hours of uninterrupted sleeping time or 30 minutes or uninterrupted eating time?

The Court held four days of trial beginning on August 14, 1980 in which it heard the testimony of 13 witnesses and admitted Exhibits # 1 through # 27 into evidence.

Upon review of the entire record, the Court hereby sets forth its findings of fact and conclusions of law pursuant to F.R. Civ.P. 52(a).

## FINDINGS OF FACT

1. Defendant Universal Ambulance Service is a closely held corporation which has been in existence for 32 years. Over the years defendant has done business under different names due to various corporate transactions, but at all times relevant to this suit has done business under the name of Universal Ambulance Service. The defendant's principal place of business is located in Macomb County, Michigan, which is within the jurisdiction of the Eastern District of this Court. (Testimony of Brian Walker)

2. The six plaintiffs–Dennis Benson, Michael Clarey, John Zimmer, William Riddock, Obrad Zivojnovity, and Patrick Clayton, were employees of the defendant for all or part of the period in question–from March 30, 1977 to March 30, 1979. (Stipulation of Parties, Final Pretrial Statement ¶ 3)

3. The plaintiffs were hired either as drivers, attendants, or dispatchers of defendant's ambulances. As such, plaintiffs' job duties consisted primarily of the pickup and transport of sick and injured persons to and from hospitals, clinics, homes, and other facilities. (Testimony of Brian Walker and all plaintiffs)

4. In addition, when not responding to calls, plaintiffs' job duties consisted of cleaning, stocking and maintaining of ambulances, completing reports on each call, cleaning and maintaining the station house, making deliveries and running various errands, laundering sheets and other items used by the business, answering phones, and "cruising" allotted areas in anticipation of emergency calls. (Testimony of Brian Walker and all plaintiffs)

5. Plaintiffs Dennis Benson, John Zimmer, and Obrad Zivojnovity were hired by Donald McLocklin, President and part–owner of Universal Ambulance Service. Plaintiffs Michael Clarey, William Riddock and Patrick Clayton were hired by Brian Walker, General Manager of Universal Ambulance Service. (Testimony of Brian Walker and all plaintiffs)

6. Plaintiff Dennis Benson was hired on August 11, 1973. At that time, he was told that "hours worked were hours paid." He was also told that he was employed to work at least 72 hours each week. (Testimony of Dennis Benson)

7. Plaintiff John Zimmer was hired on March 9, 1974. At that time, he was told that he would be paid for the entire 72 hours he worked each week. (Testimony of John Zimmer)

8. Plaintiff Obrad Zivojnovity was hired on February 23, 1974. At that time, he was told that the defendant was "the only ambulance company in Michigan which paid 24 hours on and 24 hours off." He understood that he was to be paid for all 72 hours worked. (Testimony of Obrad Zivojnovity)

9. Plaintiff Michael Clarey was hired on April 13, 1977. At that time, he was told that he was to be paid "72 hours pay for 72 hours work." It was stressed to him that the defendant was the only ambulance company which paid the full 72 hours without any deductions. (Testimony of Michael Clarey and Brian Walker)

10. Plaintiff William Riddock was hired on May 24, 1978. At that time, he was told that he would be paid 24 hours out of 24 hours. He understood that he was being paid for all 72 hours worked. (Testimony of William Riddock)

11. Plaintiff Patrick Clayton was hired on January 21, 1976. At that time, he was told he would be paid a salary for 72 hours work. Later, when he approached Mr. Walker he was specifically told that the defendant did not pay overtime wages. (Testimony of Patrick Clayton and Brian Walker)

12. When each of the plaintiffs were hired, they were not told, nor did they impliedly agree, that unpaid hours would be deducted as sleeping or eating time. (Testimony of Brian Walker and all plaintiffs)

13. The defendant's manager, Brian Walker, called a meeting of all employees in April of 1975 to discuss the company wage structure and compensation policy. Plaintiffs Dennis Benson, John Zimmer, and Obrad Zivojnovity were present at this meeting. The management and the employees agreed upon a compensation "package" which included salary, vacation time, sick days, medical insurance, and a policy for increases in salary. The question of sleeping and eating time was only mentioned in an open discussion of what other companies were doing. It was not discussed specifically as it pertained to the employees of the defendant, and no implied agreement was entered into to deduct unpaid hours for sleeping and/or eating. (Testimony of Brian Walker and John Zimmer)

14. Plaintiffs Michael Clarey, William Riddock and Patrick Clayton were not employed by defendant at the time of the April, 1975 meeting and thus were not in attendance.

15. Another meeting of defendant's management and employees was held in December of 1978. This meeting was the result of complaints by a few employees who objected to not being paid overtime compensation even for hours worked in excess of 72 hours per week. The only plaintiff present at this meeting was Obrad Zivojnovity. At this meeting, the company agreed to pay its employees overtime wages for hours worked in excess of 72 hours per week. The question of sleeping or eating time was not discussed. (Testimony of Obrad Zivojnovity and Brian Walker)

16. In January of 1979, attorneys for defendant first proposed that sleeping and eating time be deducted from the employees' 72-hour work week. The employees rejected that proposal. (Plaintiffs' Exhibit # 16, Defendant's Exhibit # 17, and testimony of Brian Walker)

17. Defendant maintained ambulances at two locations: in Warren, and in Sterling Heights, Michigan. From these two stations, the Universal Ambulance Service responded to calls in the 72 square mile, three county area of Wayne, Oakland and Macomb Counties in Michigan. (Testimony of Brian Walker and Dennis Benson)

18. Both locations of Universal Ambulance Service had sleeping quarters for the employees. These sleeping quarters consisted of a single bedroom with bunk beds. While the facilities were functionally adequate for sleeping, they were such that employees attempting to get sleep were often awakened by telephone rings, fellow employees responding to and returning from calls, and noise emanating from a nearby area where the manager often worked servicing and repairing ambulances until the early morning hours. (Testimony of Brian Walker, Obrad Zivojnovity, and Dennis Benson)

19. Plaintiffs all worked a minimum 72-hour work week. This work week was divided into three 24-hour shifts on alternating days. These 24-hour shifts began at 8:00 a.m. (Testimony of all plaintiffs)

20. Employees of the defendant worked in "crews" having one driver and one attendant per ambulance. Generally three crews worked on each shift. These crews responded to calls on a rotating basis during the hours of 10:00 p.m. until 8:00 a.m. (Defendant's Exhibits # 24 and # 25)

21. There were no restrictions on when employees could sleep. They could sleep during the daytime hours as long as they were not needed to respond to a call or other job–related duty. Most employees, including the plaintiffs, attempted to sleep during the hours of 10:00 p.m. and 8:00 a.m. at the end of their shift. (Testimony of Brian Walker and all plaintiffs)

22. During the hours of 10:00 p.m. and 8:00 a.m., each ambulance crew responded to an average of two to three calls. A "busy" night would consist of about four to six calls per crew. (Defendant's Exhibits # 24 and # 25, testimony of Brian Walker and all plaintiffs)

23. Given the nature of the ambulance business, plaintiffs were frequently interrupted when they attempted to sleep during the hours of 10:00 p.m. and 8:00 a.m. While the total amount of sleep plaintiffs were able to receive on any given night varied along with the number of calls for that evening, rarely were plaintiffs able to get more than a total of five to six hours sleep. This five to six hour period of sleep was usually interrupted by two or three calls each night. Therefore, it was very rare that the plaintiffs received more than three hours of sleep at any uninterrupted interval. (Defendant's Exhibits # 24 and # 25, testimony of Brian Walker and all plaintiffs)

24. Plaintiffs had no scheduled meal periods. They ate meals whenever they could find the time. Plaintiffs' meals were often interrupted by calls to duty, since they were required to inform the dispatcher of where they would be stopping to eat. These interruptions were various, but frequently plaintiffs were unable to sit down to a 30–minute uninterrupted meal period. (Testimony of all plaintiffs)

25. The defendant's General Manager, Brian Walker, had very little idea of what was required of him under the federal overtime laws. He never inquired of the Wage and Hour Division of the Department of Labor as to what the defendant's obligations were under the law. Mr. Walker did receive posters and information from the federal government concerning overtime, but he did not pay close attention to them. (Testimony of Brian Walker)

26. Mr. Walker never proposed that hours be deducted for sleeping or eating. He did tell the plaintiffs that "hours worked were hours paid" and that Universal was the only ambulance company in Michigan paying its employees for the full 72 hours worked. Mr. Walker never entered into an implied agreement with any of the plaintiffs to deduct sleeping or eating time as unpaid hours. (Testimony of Brian Walker)

27. The defendant's failure to pay overtime wages as required by law was in good faith. (Testimony of Brian Walker)

28. The parties are in agreement as to the salary rates and unpaid hours in controversy for each of the plaintiffs. (Plaintiffs' Exhibits # 3 through # 8 (admitted by stipulation)).

## CONCLUSIONS OF LAW

1. Jurisdiction is conferred on this Court by Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b).

2. The plaintiffs and the defendant were engaged in interstate commerce within the meaning of 29 U.S.C. § 207(a). See Memorandum Opinion and Order *supra.*

3. The plaintiffs are not exempt from the wage and hour provisions of the Fair Labor Standards Act by virtue of the Motor Carriers Act, 49 U.S.C. § 304. See Memorandum Opinion and Order *supra.*

4. Section 7(a)(1) of the Fair Labor Standards Act provides in pertinent part: "(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer that forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one–half times the regular rate at which he is employed."

■ 5. Among the primary purposes of the Fair Labor Standards Act is to enable a substantial portion of the American work force to maintain a minimum standard of living, to insure national uniformity in the minimum levels of employment compensation, and to eradicate the burdens on interstate commerce caused by substandard labor conditions. *United States v. Darby Lumber Co.*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

■ 6. Intention is not an element of a violation of the overtime provision of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). "Good faith" in failing to pay overtime compensation as required by the Act does not exonerate the defendant from liability.

*IMPLIED AGREEMENT*

■ 7. An employer may enter into an express or implied agreement with his employees to deduct unpaid sleeping and/or eating time from hours worked. 29 CFR 785.19, 785.22; *Armour v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944).

■ 8. The plaintiffs did not expressly or impliedly agree with the defendant to deduct unpaid sleeping and/or eating time from the 72 hours they worked each week.

9. Absent such an agreement, the defendant is required to pay the plaintiffs back pay in the form of overtime wages for hours worked in excess of the statutory 40–hour work week for the two–year period in question.

*INTERRUPTION OF SLEEPING OR EATING TIME*

10. Having found that no implied agreement existed between the parties, it is unnecessary to reach the second issue raised in this litigation. However, since the evidence with respect to this issue is uncontroverted, the Court will briefly address it.

11. Section 785.22(b) of the regulations of the Wage and Hour Division of the Department of Labor provides in pertinent part:

"(b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least five hours' sleep during the scheduled period the entire time is working time."

12. Section 785.19 of the regulations of the Wage and Hour Division of the Department of Labor provides in pertinent part:

"The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating."

13. Even if an implied agreement to deduct sleeping and eating time did exist, the defendant would still be in violation of the Fair Labor Standards Act. The plaintiffs rarely received five hours of uninterrupted sleep or 30 minutes of uninterrupted meal time as mandated by the Wage and Hour Regulations, and therefore such time periods must be considered as hours worked.

*RELIEF*

14. Pursuant to Section 7(a)(1) and Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), 216(b), the defendant owes the plaintiffs overtime wages, with interest thereon as provided by law, in the following amounts:

| | |
|---|---|
| Dennis Benson | $ 5,568.00 |
| Michael Clarey | 4,475.52 |
| John Zimmer | 4,929.52 |
| William Riddock | 1,774.08 |

| | |
|---|---|
| Obrad Zivojnovity | $ 4,878.40 |
| Patrick Clayton | 4,713.60 |

■ 15. An additional award of liquidated damages, in an amount equal to the unpaid overtime compensation, is discretionary with the Court under Section 16(b) of the Act, 29 U.S.C. § 216(b). *Laffey v. Northwest Airlines Inc.*, 567 F.2d 429, 463–464 (C.A.D.C. 1976), *cert. denied* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977). Such liquidated damages, however, should not be awarded in cases such as the present in which the employer acted innocently and in good faith in violating the Act. See *Nitterright v. Claytor*, 454 F.Supp. 130 (D.D.C. 1978); *Herman v. Roosevelt Federal Savings & Loan Assoc.*, 432 F.Supp. 843 (E.D.Mo. 1977), *affirmed*, 569 F.2d 1033 (C.A.8, 1978); *White v. Beckman Dairy Co.*, 352 F.Supp. 1266 (W.D.Ark. 1973). The Court therefore denies plaintiffs' prayer for liquidated damages.

16. The Court hereby enjoins the defendant from future violations of the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b).

17. The Court assesses a reasonable attorneys fee and the costs of the action against the defendant. The Court will defer its ruling on the amount of such attorneys fee and costs until such time as counsel for plaintiff substantiates this amount.

18. For the reasons stated, the Court shall enter an appropriate judgment for plaintiffs and against defendant forthwith.

IT IS SO ORDERED.