**Gary S. MAJCHRZAK, Plaintiff,**

v.

**CHRYSLER CREDIT CORPORATION, a Delaware corporation, Defendant.**

Civ. No. 79–30030.

United States District Court,
E. D. Michigan, S. D.

Sept. 2, 1981.

Lawrence J. Breskin, Detroit, Mich., for plaintiff.

Bruce D. Carey, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brings this action under Section 16(b) of the Fair Labor Standards Act (hereinafter "Act"), 29 U.S.C. § 216(b). Plaintiff claims that the defendant violated Section 7(a)(1) of the Act, 29 U.S.C. § 207(a)(1), which requires compensation for nonexempt employees "at a rate of not less than one and one-half times the regular rate" of pay for all hours worked in a work week which exceeds forty hours. Pursuant to 29 U.S.C. § 216(b), plaintiff seeks both legal and equitable relief.

Defendant answers by stating that plaintiff was properly compensated for all hours worked and that if he was not properly compensated then the amount of time and money is de minimus and that such error was made only in good faith.

The Court held three days of trial commencing on August 10, 1981, during which it heard the testimony of 13 witnesses (one by way of deposition) and admitted Exhibits # 1 through # 9 into evidence.

Upon review of the entire record, the Court hereby sets forth its findings of fact and conclusions of law as mandated by F.R. Civ.P. 52(a).

## FINDINGS OF FACT

1.) Plaintiff is a resident of the State of Michigan and at all times pertinent hereto was employed at one of defendant's branch offices in Troy, Michigan.

2.) Defendant is a Delaware corporation authorized to do and is doing business in the State of Michigan. Its principal place of business is Troy, Michigan, where it also operates a branch office.

3.) For the purpose of this litigation, the litigants admit that this Court has jurisdic-

tion over the controversy and that plaintiff's position with the defendant corporation would not exempt him from the Act under 29 U.S.C. § 213.

4.) Plaintiff is and has been an employee of defendant since November 24, 1975.

5.) From November 24, 1975 to April 24, 1977, plaintiff was employed by defendant as a salaried field representative in connection with the collection of delinquent accounts. This position required personal contact in a variety of forms with debtors of the defendant and necessarily involved a considerable amount of driving or "road work." Since the job description contemplated, among other things, repossessing cars, locating "skipping clients" and collecting delinquent loan payments, the duties are not of the type commonly associated with an "in office" position.

6.) In the spring of 1977, plaintiff was promoted to the position of "adjuster—customer accounts." From April 25, 1977, to August 20, 1979, (the date the complaint was filed) and to the present, plaintiff has held this position. The job description of adjuster contemplates the collection and adjustment of delinquent accounts. Unlike the field representative job, an adjuster is involved in a considerable amount of telephone contact with debtors of the defendant and is considered an "in office" position.

7.) Neither salaried position held by plaintiff requires the use of a time clock. Rather, defendant's personnel policy in this regard requires the general salaried employees to record and maintain a complete daily record of their time on a form entitled "Salary Attendance Statement."

8.) To insure veracity and compliance with this personnel policy, the salaried employees' immediate supervisor is responsible for reviewing each "Salary Attendance Statement" and either approving or disapproving the statement as submitted.

9.) Ultimate accountability for the accuracy of the recording and reporting of all hours worked within a branch office rests with its respective manager.

10.) This hierarchy of responsibility with respect to the accurate recordation of hours worked by general salaried employees is intended to reflect the defendant's official policy regarding overtime payment, to wit:

It is the Company's policy to follow to the letter of the law the requirement to pay "non-exempt" employees for all hours worked in excess of 40 hours in a work week at the rate of one and one-half times the regular base salary plus the applicable cost-of-living allowance. In those states requiring payment for all hours in excess of eight in a work day at the rate of one and one-half times the regular salary, it is the Company's policy to pay one and one-half times the regular base salary plus the applicable cost-of-living allowance for all hours worked which are in excess of eight in a 24 hour period. The Salary Attendance Card must reflect the actual working hours of the employee; posting of the "normal" office hours will not suffice when an employee is actually working hours which do not correspond with the "normal" office hours.

11.) The Court makes no finding as to the merits of the system employed by the defendant to meet its avowed goal of compliance with the Act. The evidence showed that the business engaged in by defendant is unusual if not unique and that a recordation system flexible enough to address and anticipate the nature of the enterprise is necessary.

12.) However, based on the facts presented at trial the Court believes that such a system is susceptible to abuse and indeed was abused herein. The Court finds that the hours actually reported by the plaintiff under such a system only reflect with accuracy the number of hours worked by him up to and including 40 hours per week. As later developed more fully, these hours do not reflect the total number of hours worked by plaintiff.

13.) As both a field representative and adjuster, plaintiff was required to work outside the normal 8:30 a. m. to 5:00 p. m. routine because the nature of the job did not and could not always conform to such a

schedule. When he worked more than eight hours on a given day, defendant's personnel policy entitled plaintiff to adjust his work schedule to keep it within the confines of a forty-hour week.

14.) This particular personnel policy, commonly referred to as allotting "compensation time" was never recorded. Rather, the decision of whether to permit compensation time under this scheme was based upon the respective supervisor's or manager's instinct and memory.

15.) In an effort to control the total number of hours worked in defendant's branch office, overtime was compensated only when it was posted or "approved" prior to the actual working of those hours.

16.) At all times pertinent hereto, defendant was cognizant of the fact that plaintiff was covered by the Act and indeed distributed a memorandum to that effect based on the decision in *Hodgson v. General Motors Acceptance Corp.*, 347 F.Supp. 9 (SD Fla., 1972).

17.) However, Findings of Fact 13, 14, 15, and 16, among others, do not paint the total picture with regard to hours worked and hours compensated. Despite upper management's written policy on overtime compensation, lower management's practice did not permit plaintiff to record all overtime hours actually worked but rather only those overtime hours which were "approved" prior to their actual working.

18.) Using as a lure the prospect of future advancement and job security, as well as implicit and explicit threats and actions, lower management made it clear that all work related responsibilities must be completed in a forty-hour work week. Defendant expected plaintiff to work overtime without compensation and without complaint.

19.) Without admitting any violation of the Act, defendant made voluntary payments for uncompensated overtime to some of its employees.

20.) The Court finds that defendant has failed to maintain accurate records of plaintiff's overtime hours and plaintiff has proven that he in fact did work overtime for which he was not compensated. Further, plaintiff's proofs sufficiently demonstrated that the maximum amount of overtime he may be compensated for (from August 20, 1976, to August 20, 1979) is in the amount of $3,500.00.

## CONCLUSIONS OF LAW

1.) Jurisdiction is conferred on this Court by Section 16(b) of the Act, 29 U.S.C. § 216(b). *Robertson v. Argus Hosiery Mills Inc.*, 121 F.2d 285 (CA 6, 1941), *cert. denied* 314 U.S. 681, 62 S.Ct. 181, 86 L.Ed. 544.

2.) At all times pertinent herein, plaintiff was employed by an enterprise engaged in commerce and was thereby covered by the definitions in Sections 3(r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) respectively. *Hodgson v. General Motors Acceptance Corp.*, 347 F.Supp. 9 (SD Fla., 1972), *aff'd sub nom. Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825 (CA 5, 1973). Consequently, defendant was subject to the provisions of the Act. *See generally, Wirtz v. Trashmoval Inc.*, 323 F.2d 451 (CA 4, 1963), *cert. denied* 377 U.S. 925, 84 S.Ct. 1222, 12 L.Ed.2d 216.

3.) Under such circumstances, the responsibility for making, keeping and preserving accurate records of the number of hours worked by the plaintiff rested solely on the defendant. 29 U.S.C. § 211(c). This duty, imposed by law, is neither delegable nor dischargeable. *Walling v. Sun Publishing Co.*, 47 F.Supp. 180 (DC Tenn., 1942), *affirmed* 140 F.2d 445 (CA 6, 1942), *cert. denied* 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564.

4.) Since the litigants have stipulated that plaintiff is not exempt from the protection of the Act, the pertinent part of Section 7(a)(1) of the Act, 29 U.S.C. § 207(a)(1) provides:

No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a

workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

5.) Plaintiff must prove that "he has in fact performed work for which he was improperly compensated" and "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–688, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).

6.) Once established, the burden of proof shifts to the defendant "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn" from the plaintiff's prima facie case. *Id.*

7.) Within the framework of a trial and the application of the evidence to the elements necessary to prove the case, the Court must also render a decision on the appropriate statute of limitations. *Bormann v. Long Island Press Publishing Co. Inc.*, 379 F.Supp. 951 (DC N.Y., 1974).

8.) Section 6 of the Portal to Portal Act, 29 U.S.C. § 255(a), establishes a two-year statute of limitations unless the cause of action arises under a "wilful" violation. In the latter case, the statute of limitations is three years.

9.) An employer violates the Act wilfully if a violation occurs and the employer knows or has reason to know that the employee in question is protected by the Act. Wilfulness does not include mere negligence or inadvertence. However, it does not require intent. *Benson v. Universal Ambulance Service Inc.*, 497 F.Supp. 383 (ED Mich., 1980); *Usery v. Godwin Hardware Inc.*, 426 F.Supp. 1243 (ED Mich., 1976).

10.) In applying the findings of fact to the law thus far, the Court concludes that plaintiff has proved his case and defendant has failed to meet its burden. The Court also concludes that the violation in question was wilful and that the three-year statute of limitation applies.

11.) Thus the Court may award damages to the plaintiff, "even though the result be only proximate." *Anderson v. Mt. Clemens, supra* at 687–688, 66 S.Ct. at 1192. When an employer fails to maintain accurate and truthful records, as here, exacting evidence on the amount of actual uncompensated wages is not mandatory. What is required is a workable data base, derived from the evidence; so that the trial court can make a meaningful decision on damages. *See Reeves v. International Telephone & Telegraph Corp.*, 616 F.2d 1342, 1351–1352 (CA 5, 1980); *cert. denied* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 and cases cited therein.

12.) In addition to compensatory damages, an award for liquidated damages is provided for in Section 11 of the Portal to Portal Act, 29 U.S.C. § 260. A defendant in violation of the Act may escape or reduce its liability under this section only if it persuades the Court both that it acted in good faith and upon reasonable grounds when it committed the proscribed violation. *See*, 29 C.F.R. Sections 790.13–22 (July 1, 1979). Otherwise, the Court has no alternative but to double the amount of uncompensated wages. *McClanahan v. Mathews*, 440 F.2d 320 (CA 6, 1971).

13.) Defendant has failed to meet the two-prong test of 29 U.S.C. § 260; thereby requiring an award of liquidated damages equal to the amount of compensatory damages.

14.) Consequently, the Court concludes that plaintiff has owing the amount of $3,500.00 in unpaid overtime compensation and an equal amount in liquidated damages.

15.) Under the circumstances, the Court also concludes that an application of Section 17 of the Act, 29 U.S.C. § 217 is unwarranted. Sufficient affirmative evidence was produced to indicate defendant's future compliance with the Act. *Wirtz v. Flame Coal Co*, 321 F.2d 558 (CA 6, 1963); *Marshall v. J. C. Penney Co. Inc.*, 464 F.Supp. 1166 (ND Ohio, 1979).

16.) The Court assesses reasonable attorney fees and costs of the action against the defendant. The Court will defer its ruling on the amount of such attorney fees and costs until such time as plaintiff substantiates this amount. 29 U.S.C. § 216(b).

17.) For the reasons stated, the Court shall enter an appropriate judgment for plaintiff and against defendant forthwith.

IT IS SO ORDERED.