William DOVE, et al.

v.

George A. COUPE, et al., Appellants.

James Dovean JEWELL

v.

George A. COUPE, d/b/a Admiral
Limousine Service, et al.,
Appellants.

Nos. 84–5047, 84–5048.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 17, 1985.

Decided April 9, 1985.

Jeffrey L. Berger, Washington, D.C., with whom Edward R. Levin, Washington, D.C., was on the brief, for appellants.

Sydney E. Rab, Washington, D.C., for appellees.

Edward M. Statland, Washington, D.C., entered an appearance for appellees.

Before WRIGHT, WALD and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This is an appeal from three judgments awarding minimum wage and overtime compensation. *Dove v. Coupe*, No. 81–3032 (D.D.C. Dec. 21, 1983) [hereinafter cited as Magistrate's Decision]. The appeal centrally raises the question whether the workweek as a whole, or each individual hour within the workweek, is the relevant unit for determining compliance with the minimum wage prescriptions of federal and local law. Fair Labor Standards Act, 29 U.S.C. § 206(a) (1982); District of Columbia Minimum Wage Act, D.C.CODE ANN. § 36–203(a) (1981). The appeal further presents issues concerning the calculation of overtime compensation under District of Columbia law, *see* D.C.CODE ANN. § 36–203(b) (1981),[1] and entitlement to liquidated damages under virtually identical federal and local provisions. 29 U.S.C. §§ 216(b), 260 (1982); D.C.CODE ANN. § 36–215(a) (1981). We conclude that in this case, involving a single job (limousine driving), the relevant period is the workweek, not the individual hour. We therefore vacate two of the three judgments and remand for reconsideration of those dispositions in part.

---

**1.** *See infra* note 10.

## I.

Plaintiff-appellees are William Dove, Samuel W. Pinner, Jr., and James Dovean Jewell, individuals who worked as drivers for Admiral Limousine Service (Admiral). Dove and Pinner claimed that in the years 1979, 1980, and 1981, Admiral failed to pay them the minimum wages and overtime compensation to which they were entitled. Jewell claimed that Admiral owed him overtime compensation for work he performed in the years 1979 and 1980. Defendant-appellants are George A. Coupe and Bernard Resnick, owners of Admiral;[2] they contest the judgments rendered in favor of each of the plaintiff-appellees by the federal magistrate to whom the case was referred for trial. *See* 28 U.S.C. § 636 (1982).

We find no reversible error in the disposition of Jewell's claim and therefore affirm the judgment in his favor for overtime compensation and liquidated damages in all respects. We vacate the judgments for Dove and Pinner because the magistrate's calculations erroneously base the minimum wage determination on an hour-by-hour rather than a workweek standard. We hold, however, that the magistrate did not err in awarding liquidated damages to Dove and Pinner; we affirm his determination on that issue, and instruct that the entitlement of Dove and Pinner to liquidated damages is not open for renewed challenge by Admiral on remand.

## II.

In the period at issue, 1979–1981, drivers Dove and Pinner were expected to report to the premises of their employer Admiral at 8:30 a.m., and to wait there until they received a driving assignment. They were not permitted to conduct personal business while waiting, but they were allowed half an hour off for lunch. Admiral maintained this waiting time arrangement so that it would have a pool of ready drivers on its premises to meet the unpredictable number of calls it received for service. If Dove and Pinner did not receive a driving assignment by 5:00 p.m., as sometimes occurred, they were then allowed to end their workday. Magistrate's Decision at 3, 19, 26–27.

Dove and Pinner were compensated in three ways. First, if they arrived by 8:30 a.m., and received no assignment or an assignment that began after 5:00 p.m., they were paid a "guarantee." The guarantee was twenty dollars a day until September 1981, when it was raised to thirty dollars a day.[3] Second, if they received an assignment, they were paid a "driver's share" of the fare. The driver's share was one-third of the hourly rate paid by the customer until September 1981, when it became a flat hourly rate. If the driver's share was less than the guarantee, the drivers were paid the guarantee. Finally, tips charged to the customers were added to the drivers' paychecks. Typically, the tips were fifteen percent of the fare; tips were received on seventy percent of the assignments. *Id.* at 27–28.

Most days, Dove and Pinner received a driving assignment before 5:00 p.m., and their driver's share exceeded the guarantee. On such days, their pay was calculated solely on the basis of driving time. If a six-hour driving assignment yielded a forty-five-dollar driver's share, plus tip, the driver earned this same amount whether the assignment began at 9:00 a.m. or at 4:00 p.m. To secure eligibility for the guarantee in the event that no or only brief assignments came in, however, Dove and Pinner had to arrive at Admiral's premises by 8:30 a.m. *Id.*

Jewell's arrangement was different. He was not required to report to work. Instead, he proceeded directly from his home to his driving assignment. His compensa-

---

**2.** The name Admiral, as used in this opinion, refers to Coupe, Resnick, and the business they did as Admiral Limousine Service.

**3.** An information sheet received in evidence at trial explained the guarantee this way: "Guaranty is $30.00 for an 8 hour day and covers the time from 8:30 am to 5:00 pm. Guaranty is secured for any jobs totaling under $30.00 between 8:30 am and 5:00 pm. Guaranty is secured for any job that begins at 5:01 pm or after. You must be on time to collect the guaranty." Magistrate's Decision at 5.

tion included only his driver's share and tips; the terms of his employment made him ineligible for the guarantee. *Id.* at 17.

Dove and Pinner, on days when they received no driving assignment, waited eight hours. When they obtained a driving assignment, their workday, waiting period plus driving period, often exceeded eight hours. Both worked on weekends. Their workweek, according to their estimates, generally ran well above forty hours. Jewell worked irregular hours. According to his testimony, which the magistrate found credible, he worked for Admiral twenty-five to thirty weeks a year and averaged sixty-five hours per week. No overtime compensation was paid to these drivers. *Id.* at 3, 13, 17, 29.

Admiral kept daily records of the guarantee, driver's share, and tips. Drivers were given the opportunity to correct inaccurate daily records when they received their weekly pay. Admiral also maintained payroll records that were, in effect, a second set of books. It re-calculated hours backward from compensation, assuming an arbitrary rate of pay exceeding the minimum wage and allowing time-and-a-half for overtime. It then reported these figures to the authorities as actual hours worked. Because the arbitrary rate of pay was relatively low, reported hours worked often ran high. For example, Admiral once reported that Pinner had worked a 157-hour week, or over twenty-two hours a day. The drivers testified that the payroll figures thus used in official reports were inaccurate. A representative of the District of Columbia Wage Board examined Admiral's records in 1981; she was not told, in the course of the examination or thereafter, that the hours recorded were artificial. *Id.* at 4–16, 21 n.8.

In December 1981, Dove filed a complaint against Admiral seeking damages for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982), and the District of Columbia Minimum Wage Act, D.C.CODE ANN. §§ 36–201 to –219 (1981).

Pinner intervened in Dove's action. Jewell filed a separate complaint, which was consolidated with the Dove and Pinner action.

In December 1983, the magistrate who presided at the trial issued a detailed and thorough opinion. He awarded Dove and Pinner the minimum wage for their waiting time, without regard to the compensation they had received for driving time. Magistrate's Decision at 48–51, 56–58. He held all three plaintiffs entitled to time-and-a-half for overtime, and to liquidated damages. *Id.* at 42, 51–56, 58–62. In calculating the awards, the magistrate credited the testimony of Dove and Pinner that, generally, waiting time equaled time spent driving. *Id.* at 47–48. He decreed judgments of $27,234.40 for Dove, $37,147.66 for Pinner, and $2,650.16 for Jewell.

Appealing from these judgments, Admiral first asserts that Dove and Pinner should not have been awarded minimum wages for each hour of waiting time; instead, Admiral contends, all wages earned in the week should have been averaged to determine minimum wage compliance. Second, Admiral now urges that, for the purpose of determining weekly hours and compensation due for those hours, Admiral's work records provide a basis for calculation more reliable than the sources used by the magistrate. Finally, Admiral argues that it should not be held liable for liquidated damages. We consider each of Admiral's points in turn.

### III.

As earlier explained, Dove and Pinner received a guaranteed amount for days when they reported to work at 8:30 a.m. but received no or only short driving assignments prior to 5:00 p.m. If their compensation for driving time exceeded the guarantee, they received only that pay, and no separate compensation for waiting. Except for two months in 1981, the guarantee for the period in question was less than eight hours' pay at the minimum wage.[4]

---

**4.** From 1979 to 1981, the federal minimum wage rose from $2.90 to $3.35. The guarantee was initially $20, or $2.50 per hour. It rose to $30, or $3.75 per hour, on September 1, 1981;

For days on which Dove and Pinner received the guarantee, the magistrate awarded them minimum wage compensation for the amount by which eight hours' pay at the minimum wage exceeded the guarantee. For waiting time on days when they did not receive the guarantee, the magistrate awarded Dove and Pinner the minimum wage. Admiral argues that it did not violate the minimum wage laws in weeks when total compensation exceeded total hours worked multiplied by the minimum wage, even though specific hours worked during those weeks may have been attributed no wage or less than the minimum wage. Admiral claims, in short, that the workweek is the unit for determining its compliance with minimum wage provisions. The drivers assert that the work hour, not the workweek, is the relevant unit of time.

The language of the federal and local minimum wage provisions is open to the interpretation that the drivers urge. Both laws define the minimum wage in terms of an hourly rate.[5] Neither law "expressly provide[s] for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided." *Travis v. Ray*, 41 F.Supp. 6, 9 (W.D.Ky.1941); *see also United States v. Rosenwasser*, 323 U.S. 360, 364, 65 S.Ct. 295, 297, 89 L.Ed. 301 (1945).

The purpose of the minimum wage provisions is "to protect certain groups of the population from sub-standard wages ... due to ... unequal bargaining power." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706, 65 S.Ct. 895, 902, 89 L.Ed. 1296

(1945). That purpose is met by the workweek standard:

> Payment at intervals shorter than weekly is ... not necessary to enable the employees to meet their customary obligations. Accordingly the Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

*United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir.1960). Hour-by-hour compliance, on the other hand, although tilting in the employees' favor, would not thwart Congress' endeavor "to guarantee a minimum livelihood to the employees covered by the Act." *Id.* While the minimum wage laws logically could be construed as requiring hour-by-hour compliance, *Travis v. Ray*, 41 F.Supp. at 9, both administrative and judicial decisions established the workweek as the measuring rod for compliance at a very early date.

Not long after the federal minimum wage was first established, the General Counsel of the Wage and Hour Division of the Department of Labor stated that "[f]or enforcement purposes, the Wage and Hour Division is at present adopting the workweek as the standard period of time over which wages may be averaged to determine whether the employer has paid the equivalent of [the minimum wage]." Wage & Hour Release No. R–609 (Feb. 5, 1940), *reprinted in* 1942 Wage Hour Manual (BNA) 185.[6] The General Counsel, mindful that the statute defined the minimum wage

the minimum wage for the District of Columbia rose to $3.90 effective October 31, 1981. *See infra* note 5.

**5.** Federal law governing the case at hand prescribed that Admiral "pay to each of [its] employees ... wages at the following rates: ... not less than $2.90 an hour during [1979], not less than $3.10 an hour during [1980], and not less than $3.35 an hour after [1980]." 29 U.S.C. § 206(a) (1982). District of Columbia Wage-

Hour Board Wage Order No. 12, effective October 31, 1981, required Admiral to pay at least "$3.90 an hour," "for each hour of working time." Employees are entitled to the local minimum wage when it is higher than the federal minimum wage. *See Central Delivery Serv. v. Burch*, 355 F.Supp. 954 (D.Md.1973).

**6.** This statement of policy issued 19 months after passage of the Fair Labor Standards Act.

as an hourly rate, candidly added that the opinion proffered did not bind the courts and that, for example,

> the courts might hold to be a violation of the law [a case] where the employer does not pay anything for hours properly considered to be hours worked, such as periods of waiting time.... [T]he courts might take a period less than a workweek as the standard ·under [29 U.S.C. § 206], but ... until directed otherwise by authoritative ruling of the courts, the Division will take the workweek as the standard for determining whether there has been compliance with the law.

*Id.* There has never been an authoritative ruling of the courts directing a standard other than the one the Wage and Hour Division has followed. Shortly after the Wage and Hour Division announced that it was adopting the workweek standard, the court in *Travis v. Ray*, 41 F.Supp. at 9, accorded the administrative interpretation "great weight," and held that "[t]he rate per hour should be determined by treating each work week as a separate unit of time." *Id.*

The workweek measuring rod has never been promulgated as an agency regulation;[7] however, the Wage and Hour Division continues to adhere to it,[8] and the courts have agreed that the workweek standard generally represents an entirely reasonable reading of the statute. *See Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1197–98 (4th Cir.1969); *Klinghoffer*, 285 F.2d at 490; *McDowell v. Purolator Courier Corp.*, 25 Wage & Hour Cas. (BNA) 503, 505–06 (E.D.Ky. 1982); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 301–03 (N.D.N.Y. 1978); *Travis v. Ray*, 41 F.Supp. at 9. *But cf. United States v. Universal C.I.T. Credit Corp.*, 102 F.Supp. 179, 183 (W.D.Mo.) (dictum in criminal case), *aff'd*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

■ In keeping with the view of our sister courts, and giving respectful consideration to the position of the agency charged with administration of the Fair Labor Standards Act,[9] we hold that the magistrate erred in employing a period shorter than the workweek to measure compliance with minimum wage law. We therefore vacate the ·judgments for Dove

---

7. The parties suggest that various clauses in 29 C.F.R. § 778 (1984) are relevant to a determination of the period for measuring minimum wage compliance, but all of the provisions they cite concern overtime compensation. The measuring rod for overtime compliance, "a workweek longer than forty hours," is explicitly established by statute. 29 U.S.C. § 207(a)(1) (1982). Admiral also cites 29 C.F.R. § 776.4 (1984), which states that the workweek is the standard for determining the *applicability* of the minimum wage law. This rule merely restates 29 U.S.C. § 206(a) (1982), which employs the workweek to determine whether an employee falls within the scope of the federal minimum wage law. It does not inevitably follow that, because the workweek is the standard for applicability, it must also be the standard for compliance.

8. Opinion Letter No. 1560, [2 Wages-Hours] Lab. L.Rep. ·(CCH) ¶ 31,363 (Mar. 3, 1981); Opinion Letter No. 535, [1961–1978 Transfer Binder] Lab. L.Rep. (CCH) ¶ 30,522 (Nov. 30, 1966); Opinion Letter No. 120, [1961–1978 Transfer Binder] Lab. L.Rep. (CCH) ¶ 30,668 (Aug. 7, 1962); Opinion Letter No. 100, [1961–1978 Transfer Binder] Lab. L.Rep. (CCH) ¶ 30,640 (May 31, 1962); Opinion Letter No. 24, [1961–1978 Transfer Binder] Lab. L.Rep. (CCH) ¶ 30,533 (Oct. 3, 1961). Three ad-

visory opinions relied upon by the drivers are not to the contrary. The opinion given at 1942 Wage Hour Manual (BNA) 189, and apparently the one referred to in Lab.Rel.Fed. Wages & Hours (P–H) ¶ 9311.3, at 9304 as well, concern workers for whom a wage order has established a minimum wage for part of their work higher than the minimum wage applicable to the remainder. *See* 1942 Wage Hour Manual (BNA) 286–87. Such is not the case here. The summary of an opinion at 6A Lab.Rel.Rep. (BNA) 95:23 (1977), is delphic. We cannot determine whether the opinion turns on the disparate character of the jobs and forms of compensation in question (hourly rate for part of workweek as radio announcer, commission basis for balance as salesman); in any event, the opinion does not appear to reject averaging workweek pay for a single job for minimum wage compliance purposes.

9. *See, e.g., Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974).

and Pinner because they have been calculated incorrectly.

## IV.

Admiral criticizes the method employed by the magistrate to calculate overtime compensation. On appeal, Admiral tenders a presentation it did not make to the magistrate; it proposes a different means of determining hours for which compensation is due. We set out below the approach used by the magistrate, and the alternative tardily explained by Admiral. We then evaluate Admiral's position.

The magistrate's computations began with the daily records, which listed the compensation earned by each driver each day. From these records the magistrate ascertained the days on which the guarantee was received, and he multiplied the number of such days by the guarantee. Next, the magistrate subtracted this guarantee income from annual gross income as reported in the payroll records to arrive at annual income from driver's share plus tips. The magistrate then calculated average driver's share plus tips per hour, based on testimony concerning driver's share and the magnitude and frequency of tips. Proceeding this way, the magistrate found the average wage per driving hour to be $7.89 in 1979 and 1980, and $9.53 in 1981. Dividing total income from driver's share plus tips by this hourly average, the magistrate determined the number of hours driven. Magistrate's Decision at 43–47.

After determining driving time, the magistrate turned to the estimation of waiting time. He noted that there were no records of waiting time. Dove and Pinner had testified, however, that waiting time generally equaled the time spent driving, and the magistrate found that assertion reasonable. On the assumption that waiting time equaled driving time, the magistrate subtracted waiting time compensated by the guarantee from total waiting time, to yield waiting time that was not directly compensated. He then adjusted total work time to exclude time spent driving outside the District of Columbia, based on drivers' testimony. Magistrate's Decision at 47–48, 54, 59.[10]

Admiral concedes that at trial, it concentrated on the contention that there was no liability, not on the method appropriate to determine hourly wages or weekly overtime. Now, on appeal, Admiral vigorously assails the magistrate's hours computation and presents computations yielding overtime liability of $6,688.63, in lieu of the $9,656.03 sum determined by the magistrate.

Admiral proceeds from the work records, which often, but not always, show starting and completion times for a driver's individual assignments. For several hundred assignments ("one-way-only trips"), principally airport travel, the completion time was not recorded because the fare was fixed and independent of driving time. For these cases, Admiral made estimates of driving time based on the testimony. Using the work records and the drivers' testimony concerning when they reported to work, Admiral estimated waiting time from which it ascertained both its minimum wage and overtime compliance.

We evaluate Admiral's position in light of the Supreme Court's instructions in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S.Ct. 1187, 1191–93, 90 L.Ed. 1515 (1946). An employee who brings suit under the Fair Labor Standards Act "has the burden of proving that he performed work for which he was not properly compensated." *Id.* at 687, 66 S.Ct. at 1192. The Court's explanation of how the employee sustains the proof burden has particular relevance to this case:

> When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing

---

10. The magistrate concluded that the overtime compensation provisions of the Fair Labor Standards Act were inapplicable, *see Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 582, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682 (1942), but that the drivers were entitled to overtime compensation for service of more than 40 hours a week performed within the District. *See District of Columbia v. Schwerman Trucking Co.,* 327 A.2d 818, 825 (D.C.1974).

the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises.... In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

*Id.* The statute directs employers to keep proper records of hours worked, 29 U.S.C. § 211(c) (1982); a proof standard more taxing on employees than the one the Court described would insulate employers who neglect their obligation to keep accurate and adequate records. *Anderson,* 328 U.S. at 687, 66 S.Ct. at 1192.

Once an employee proves violations by just and reasonable inference,

[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate....

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [29 U.S.C. § 211(c)]. ... It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

*Id.* at 687–88, 66 S.Ct. at 1192–93.

Admiral kept no records of when a driver signed in and out. Nor did it have any reasonable substitute for recording the number of hours its employees worked. Estimation of total work time in this case therefore must rely on extrapolation from incomplete or unreliable documentary evidence as filled in or clarified by testimony. The magistrate used Admiral's daily records and payroll records, augmented by assumptions concerning tips and the ratio of waiting time to driving time derived from testimony. Admiral now resorts to work records, augmented by assumptions concerning one-way-only trips and waiting time also drawn from testimony. None of the records employed accurately and adequately indicates actual work time. The magistrate appropriately commented that deriving "with exactitude and precision" overtime compensation owed by Admiral was "absolutely impossible." Magistrate's Decision at 39. He shared the view of plaintiffs' counsel that the chore before him involved "unscrambling the eggs." *Id.*

■ Because of the state of Admiral's records, the drivers were impelled to establish their case by just and reasonable inference from incomplete documentary evidence and their own testimony. They did so. They presented and the magistrate accepted an amalgam of documentary evidence and "the reasonable and credible estimates of the employees ... approximat[ing] an average workweek." *Brennan v. Carl Roessler, Inc.,* 361 F.Supp. 229, 233 (D.Conn.1973); *see also Mumbower v. Callicott,* 526 F.2d 1183, 1186 (8th Cir.1975). The drivers supplied sufficient data and testimony for "the trial court [to] make a meaningful decision on damages." *Majchrzak v. Chrysler Credit Corp.,* 537 F.Supp. 33, 38 (E.D.Mich.1981); *see also Reeves v. International Telephone & Telegraph Corp.,* 616 F.2d 1342, 1352 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981); *Marshall v. R & M Erectors, Inc.,* 429 F.Supp. 771, 777 n.23 (D.Del.1977); *Bingham v. Airport Limousine Service,* 314 F.Supp. 565, 574 (W.D.Ark.1970). In sum, we are satisfied that the drivers carried the burden of producing evidence that permitted the magistrate to determine reasonably and equitably the number of hours worked. *See Brennan v. Lauderdale Yacht Basin, Inc.,* 493 F.2d 188, 191 (5th Cir.1974).

Under *Anderson,* the burden shifted to Admiral to pinpoint evidence of the precise amount of work performed or to negative

the reasonableness of the inferences to be drawn from the drivers' evidence. It did neither at trial. And on appeal, Admiral has not presented a case so secure that we could find the inferences made by the magistrate clearly erroneous. *See Reeves*, 616 F.2d at 1352.

■ In the case of Jewell, who did not allege minimum wage violations, we are unable to say that the evidence now highlighted by Admiral negates the credit that the magistrate gave to Jewell's testimony in justification of the award of overtime compensation made to him. Admiral's records are simply inadequate to warrant overturning as clearly erroneous the findings supported by Jewell's testimony.

■ As for Dove and Pinner, we have already held that the magistrate erred in ordering minimum wage awards for waiting time, whether compensated by the guarantee or not, when total weekly compensation exceeded the minimum wage requirement. The minimum wage awards we have invalidated were added to actual compensation in order to calculate the regular rate of pay from which overtime compensation for Dove and Pinner was computed.[11] The overtime compensation awarded to them is therefore somewhat inflated. This court could simply recalculate the overtime awards by eliminating the inflation attributable to the minimum wage determination. However, counsel for the drivers has maintained that he can demonstrate minimum wage violations even if compliance is determined week by week. He should have the opportunity to attempt such a demonstration.

We therefore remand the Dove and Pinner claims for redetermination of the drivers' entitlement to any minimum wage recovery, and for recalculation of the overtime pay due them. Because a remand is necessary, we leave it open to the magistrate to consider, in the interest of a fair and accurate final adjudication, Admiral's assertions as to the appropriate calculation of hours worked. In view of Admiral's initial casual treatment of the damage computation issue, we are content to entrust the extensiveness of the proceedings on remand to the magistrate's sound discretion.

### V.

The magistrate awarded liquidated damages to Dove, Pinner, and Jewell. Admiral's challenges to that determination do not warrant extended discussion.

Any employer who fails to pay minimum wages and overtime compensation is liable for the unpaid wages and compensation, plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1982); D.C. CODE ANN. § 36–215(a) (1981). If the employer shows "to the satisfaction of the court" that he acted in good faith, and that he had reasonable grounds for believing that his action was lawful, however, the court "may, in its sound discretion," award no liquidated damages or reduced liquidated damages. 29 U.S.C. § 260 (1982); D.C. CODE ANN. § 36–215(a) (1981).[12]

■ This court has had recent occasion to repeat that liquidated damages for Fair Labor Standards Act violations are designed to serve a compensatory, not a penal, purpose; and, further, that the "good faith" defense depends on an affirmative

---

**11.** If a minimum wage award were indeed due, it would have been proper for the magistrate to add such an award to actual compensation in determining the regular rate of pay for overtime purposes. *See Drake v. Hirsch*, 40 F.Supp. 290, 295 (N.D.Ga.1941); *cf.* 29 C.F.R. § 778.318(c) (1984) (non-productive hours of pieceworkers).

**12.** The federal and D.C. provisions are identical in all relevant respects. The federal statute provides:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise

to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216(b)].

29 U.S.C. § 260 (1982); *see Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

showing of a genuine attempt to ascertain what the law requires, not simply on a demonstration of the absence of bad faith. *See Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1096 (D.C.Cir.1984), *cert. denied* — U.S. ——, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985), and cases cited therein. Admiral's cavalier approach to its wage records alone suffices to indicate that the magistrate did not abuse his discretion in refusing to find that Admiral acted in good faith and with reasonable grounds to believe its overtime compensation practices were lawful. It is hardly a sign of good faith that an employer prepares one set of books for his own purposes and another for the authorities "downtown." Magistrate's Decision at 42. Nor are we impressed by Admiral's plea that its records were in some cases so "unbelievably and absurdly inaccurate," Brief for Appellants at 32, as to demonstrate the absence of any motive to cover up violations of law. Carelessness of the kind in which Admiral's management indulged surely does not compel exoneration from liquidated damages liability.

For the reasons stated: (1) the judgment for Jewell is affirmed; and (2) the judgments for Dove and Pinner are vacated and their claims are remanded for the redetermination of damages due to them.

*It is so ordered.*